IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARK HALL**, individually and on behalf of others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**HEALTHCARE SERVICES GROUP INC.**,<br><br>*Defendant.* | **Case No. 2:25-cv-04908-JDW** |

## MEMORANDUM

I have before me two qualified proposals to serve as interim lead counsel in these consolidated data breach class actions. Without any dramatic differences in the teams of proposed lead counsel, I will go with the group that appears to be slightly further along in developing its case and that represents the consensus of the majority of plaintiffs and majority of lawyers before me.

### I.  BACKGROUND

Healthcare Services Group, Inc. ("HSG") provides management, administrative, and operational services to healthcare facilities nationwide. In September 2024, it detected a data breach that allowed unauthorized actors to access names, Social Security numbers, driver's license and state identification numbers, financial account information, and other personal and health data. The thirteen lawsuits consolidated before me followed.

On October 21, 2025, I directed that any lawyer seeking appointment as interim lead counsel file an application by October 31, 2025. That Order followed my earlier decision declining to appoint the leadership structure proposed in the first-filed actions because plaintiffs were still filing additional related cases, and I concluded that I should determine leadership after I knew the full universe of cases.

On October 31, 2025, two competing groups filed motions seeking appointment as interim lead counsel. The first seeks the appointment of Charles E. Schaffer of Levin Sedran & Berman LLP, Andrew W. Ferich of Ahdoot & Wolfson, PC, and Benjamin F. Johns of Shub Johns & Holbrook LLC. The other seeks appointment of Gerald D. Wells III of Lynch Carpenter LLP and Amber L. Schubert of Schubert Jonckheer & Kolbe. On November 14, 2025, HSG notified me that it takes no position.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 23(g)(3) empowers district courts to appoint interim lead counsel. Courts apply the factors listed in Rule 23(g)(1), which govern appointment of class counsel, to the appointment of interim counsel. Those factors include: (i) the work counsel did to identify and investigate the claims; (ii) counsel's experience with class actions, other complex litigation, and the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel can commit to represent the class. *See* Fed. R. Civ. P. 23(g)(1)(A). Courts also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Ultimately, a judge should appoint the class counsel "best able to

represent the interests of the class" in light of all of the factors in Rule 23(g)(1)(A) and (g)(1)(B). Fed. R. Civ. P. 23 Advisory Comm. Note (2003 amendments).

## III.     ANALYSIS

Everyone seems to agree that I should appoint Interim Co-Lead Counsel, and I agree. In the absence of such a structure, the case would be unmanageable. Everyone who has applied to be Interim Co-Lead Counsel is qualified, and all the applicants possess the experience and resources necessary to represent the class. In addition, they have all prepared extensive complaints, researched the law, and had discussions with other plaintiffs' counsel in these cases. There's not a lot to distinguish them. Still, two marginal differences exist between the group that favors the proposal from Messrs. Schaffer, Ferich, and Johns.

*First*, Messrs. Schaffer, Ferich, and Johns (and their firms) have already engaged experts in cybersecurity, dark web monitoring, and data privacy liability to evaluate how the breach occurred, what information the perpetrators took, and how the perpetrators might use the information. Early expert involvement matters in data breach litigation because technical findings often shape allegations, discovery, and damages. Their expert selection efforts show preparation and a practical understanding of what this case will require. In contrast, Mr. Lynch and Ms. Schubert report only that they "have begun identifying the most experienced damages and liability experts …." (ECF No. 19-1 at 8.) Certainly, they aren't behind, but the other group is further along.

*Second*, Messrs. Schaffer, Ferich, and Johns have demonstrated slightly more cooperation in these cases by garnering the support of the majority of plaintiffs and their counsel. In contrast, Mr. Lynch and Ms. Schubert appear not to have support from any plaintiffs other than the ones that they represent. Again, this isn't a big difference. There's nothing wrong with seeking a lead role and refusing a proposal that denies it. But in looking for marginal differences that might clue me in to who is better situated to represent the collective group of plaintiffs in this case, the likelihood that Messrs. Schaffer, Ferich, and Johns can coordinate with other plaintiffs' counsel is a notch in their favor because potential infighting amongst the plaintiffs' counsel can only work to the detriment of the putative class.

Finally, a few words about things that did not sway me in this decision. *First*, I'm unimpressed by tactics that demonstrate more a desire to seize control of a litigation than to do the right thing for the class. For example, Messrs. Schaffer, Ferich, and Johns tout that they were the first to file cases in this court. But racing to the courthouse doesn't signal future success. And taking a couple weeks to research a case and interview putative plaintiffs, as Mr. Lynch and Ms. Schubert apparently did, is not a bad thing. Fire drills lead to mistakes, and deliberation helps to avoid those mistakes. Similarly, Messrs. Schaffer, Ferich, and Johns filed a very early motion to have themselves appointed interim class counsel, before other plaintiffs and their counsel could even file their cases. Again, that was a transparent attempt to seize control of the case and freeze out other

4

lawyers. That's not something that sits well with me, and it's a tactic that I would discourage in future cases.

*Second*, I find Mr. Lynch's and Ms. Schubert's arguments about a smaller leadership structure unpersuasive. There are two of them. The competing group has three proposed lead counsel. There's no meaningful efficiency gained by reducing the lead counsel to two lawyers and firms from three.

### IV.    CONCLUSION

This is a close choice because all applicants are qualified. But on the margins, Messrs. Schaffer, Ferich, and Johns have a stronger case that they can best represent the putative class. I will therefore appoint them as Interim Co-Lead Counsel. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

November 24, 2025