# EXHIBIT 1

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement,[1] dated as of the last date on which it is executed by all Settling Parties, is made and entered into by and among the Settling Parties: (i) Plaintiffs Rebecca Richards, Harold Henderson, Stacy Petrillo, and Stanley Williamson, individually and on behalf of the Settlement Class, by and through Class Counsel, on the one hand; and (ii) Defendant Healthcare Services Group, Inc., on the other hand. The Settlement Agreement is subject to Court approval and is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Litigation and the Released Claims, upon and subject to the terms and conditions below.

## I.    RECITALS

**WHEREAS,** on or around October 7, 2024, HCSG became aware of a cybersecurity incident, which a subsequent investigation determined potentially impacted certain data including: names, Social Security numbers, driver's license numbers, state identification numbers, financial account details, full access credentials, and medical and health insurance information.

**WHEREAS,** after HCSG identified the individuals whose Private Information may have been impacted by the Data Incident, notice was provided to those individuals beginning on August 25, 2025.

**WHEREAS**, Plaintiffs received notice from HCSG that their Private Information may have been impacted by the Data Incident.

**WHEREAS,** after HCSG provided notice of the Data Incident, multiple class action lawsuits were filed, the first of which was filed on August 27, 2025. ECF No. 1. Subsequent complaints arising from the Data Incident followed, and on September 4, 2025, Hon. Joshua D. Wolson granted Plaintiffs' Motion to Consolidate Cases. ECF No. 8. Additional cases were filed,

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section II below.

1

and on October 21, 2025, the Court granted the Second Motion to Consolidate Related Cases. ECF No. 17.

**WHEREAS,** on November 24, 2025, the Court appointed Andrew W. Ferich of Ahdoot & Wolfson, PC; Benjamin F. Johns of Shub Johns & Holbrook LLP; and Charles E. Schaffer of Levin Sedran & Berman, LLP, as Plaintiffs' Interim Co-Lead Counsel. ECF No. 24.

**WHEREAS,** on December 19, 2025, the Plaintiffs filed the operative consolidated amended complaint, asserting claims for negligence, breach of implied contract, breach of contracts to which Plaintiffs and Class Members were intended third-party beneficiaries, breach of fiduciary duty, unjust enrichment, violations of the New Jersey Consumer Fraud Act and Washington Consumer Protection Act, and for declaratory and injunctive relief. ECF No. 25.

**WHEREAS**, the Parties agreed to attend mediation, and on January 5, 2026, and the Court approved a stipulation to stay the litigation. ECF No. 27.

**WHEREAS,** prior to the mediation, the Parties engaged in informal discovery and exchanged detailed mediation statements. On March 11, 2026, the Parties participated in an all-day mediation overseen by Bennett Picker of Stradley Ronon Stevens & Young, LLP. Mr. Picker is an experienced and highly sought-after data breach mediator. The mediation was successful, with the Parties agreeing to a mediator's proposal made by Mr. Picker after hard-fought, arm's length negotiations. In the weeks that followed the mediation, the Parties worked diligently to round out and finalize this Settlement and associated documents.

**WHEREAS,** the Settling Parties have concluded that further litigation would be protracted and expensive, have considered the uncertainty and risks inherent in litigation, and have determined that it is desirable to effectuate a full and final settlement of the claims asserted in the above-referenced actions on the terms set forth below to avoid the associated burdens, risks, and

extensive costs.

**WHEREAS,** HCSG denies any wrongdoing whatsoever, and this Agreement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of HCSG with respect to any claim of any fault, liability, wrongdoing, or damage whatsoever, or any infirmity in the defenses or arguments that HCSG has asserted or would assert.

**WHEREAS,** based on their investigation and their substantial experience in data breach cases, Class Counsel has concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to Settlement Class Members and are in their best interests, and they have agreed to settle the claims that were asserted or could have been asserted in the Litigation arising out of or relating to the Data Incident pursuant to the terms and provisions of this Agreement after considering, (a) the substantial benefits that Settlement Class Members will receive from the Settlement, (b) the uncertain outcome and attendant risks of litigation, (c) the delays inherent in litigation, and (d) the desirability of permitting the settlement of this litigation to be consummated as provided by this Agreement.

**WHEREAS,** this Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against HCSG relating to the Data Incident, by and on behalf of Plaintiffs and Settlement Class Members.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED,** by and among Plaintiffs, individually and on behalf of the Settlement Class, Class Counsel, and HCSG that, subject to the Court's approval, when Judgment becomes Final, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Settling Parties, the Settlement Class, and the Settlement Class Members, except those Settlement Class Members who timely and validly opt out of the

Settlement, upon and subject to the terms and conditions of this Settlement Agreement.

## II.    DEFINITIONS

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.    "Agreement" or "Settlement" or "Settlement Agreement" means this Class Action Settlement Agreement and Release.

2.    "CAFA Notice" means the Class Action Fairness Act notice that the Claims Administrator shall serve upon the appropriate state and federal officials, as directed by Defendant, to provide notice of the proposed Settlement. The Claims Administrator shall provide a declaration attesting to compliance with 28 U.S.C. § 1715(b), which will be filed with the motion for final approval.

3.    "Claims Administration" means the process of administering the Settlement, including but not limited to providing Notice to the Class, receiving and processing Claim Forms, responding to Class Member inquiries, distributing Settlement Class Benefits, and performing other duties assigned to the Claims Administrator under the Settlement or Court orders.

4.    "Claims Administration Expenses" means the costs and expenses associated with Claims Administration and providing Notice to the Settlement Class.

5.    "Claims Administrator" or "Kroll" means Kroll Settlement Administration, LLC, the third-party class action claims administrator agreed to by the Parties subject to the approval of the Court. Under the supervision of Class Counsel, the Claims Administrator shall oversee and implement Notice and receive any Requests for Exclusion and objections. Class Counsel and Defendant's Counsel may, by agreement, substitute a different Claims Administrator, subject to Court approval.

6.      "Claims Deadline" means the postmark or electronic submission deadline for Valid Claims, which is 90 days after the Notice Deadline.

7.      "Claim Form" means the form utilized by the Settlement Class Members to submit a claim for Settlement Class Benefits. The Claim Form will be substantially in the form attached as **Exhibit A**, and will be made available on both the Settlement Website and, if requested by Settlement Class Members, by mail in paper form.

8.      "Class Counsel" means Andrew W. Ferich of Ahdoot & Wolfson, PC; Benjamin F. Johns of Shub Johns & Holbrook LLP; and Charles E. Schaffer of Levin Sedran & Berman, LLP.

9.      "Class List" means the list generated by HCSG containing the names and current or last known mailing and email addresses for all Settlement Class Members, which HCSG shall provide to the Claims Administrator within 14 days of entry of the Preliminary Approval Order.

10.     "Class Member(s)" or "Settlement Class Member(s)" means all Person(s) who falls within the definition of the Settlement Class.

11.     "Class Representatives" or "Plaintiffs" means the named Plaintiffs in this Litigation, which includes Rebecca Richards, Harold Henderson, Stacy Petrillo, and Stanley Williamson, who are being proposed to serve as representative plaintiffs for the Settlement Class.

12.     "Court" means the United States District Court for the Eastern District of Pennsylvania.

13.     "Credit Monitoring" means the Settlement Class Benefit that provides three years of single-bureau credit monitoring, which every Settlement Class Member may elect to receive under the Settlement.

14.     "Data Incident" means the potential unauthorized access of certain Private Information on HCSG's computer systems discovered on or about October 7, 2024, which gave

5

rise to the Litigation.

15.    "Defendant" or "HCSG" means Healthcare Services Group, Inc., the named Defendant in this Litigation.

16.    "Defendant's Counsel" means the law firm of Shook, Hardy & Bacon L.L.P.

17.    "Documented Monetary Loss" means the cash Settlement Payment that Settlement Class Members with documented losses—supported by Reasonable Documentation—may elect under the Settlement.

18.    "Effective Date" means the date upon which the Settlement contemplated by this Agreement shall become effective as set forth in Paragraph 91.

19.    "Email Notice" means the content of the electronic notice to the Class Members in substantially the form attached as **Exhibit B**. The Email Notice shall direct recipients to the Settlement Website and inform Class Members of, among other things, the Claims Deadline, the Opt-Out Deadline, the Objection Deadline, the requested attorneys' fees, and the date of the Final Fairness Hearing.

20.    "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is finally approved by the Court; (ii) the Court has entered a Judgment (as defined below); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fee award or service award made in this case shall not affect whether the Judgment is Final or any other aspect of the Judgment.

21.    "Final Fairness Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Settlement pursuant to the Federal Rules of Civil Procedure and for the Court to determine whether to issue the Judgment.

22.    "Judgment" means a judgment rendered by the Court, after the Final Fairness Hearing, which finally approves the Settlement Agreement, certifies the Settlement Class, dismisses the Litigation with prejudice, and is consistent with all material provisions of this Settlement Agreement. Class Counsel and Defendant's Counsel will work together on a proposed Judgment, which HCSG must approve before filing.

23.    "Litigation" or "Action" means the lawsuit captioned *Richards, et al., v. Healthcare Services Group, Inc.*, Case No. 2:25-cv-04908-JDW, pending in the United States District Court for the Eastern District of Pennsylvania.

24.    "Long Notice" means the long form notice of settlement posted on the Settlement Website, substantially in the form as shown in **Exhibit C** hereto.

25.    "Motion for Attorneys' Fees, Costs, and Service Awards" means the motion that Plaintiffs shall file with the court seeking approval of their fees, costs, and service awards.

26.    "Net Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) Claims Administration Expenses incurred pursuant to this Settlement Agreement; (ii) any amounts approved by the Court for attorneys' fees and reimbursement of litigation costs and expenses; (iii) Service Awards approved by the Court; and (vii) applicable taxes, if any.

27.    "Notice" means notice of the proposed Settlement to be provided to Class Members pursuant to the Preliminary Approval Order. It includes Email Notice, Short Notice, and Long Notice.

28. "Notice Deadline" means 30 days after entry of the Preliminary Approval Order and is the date by which the Claims Administrator shall establish the Settlement Website, toll-free telephone line, and commence the initial mailing of the Email Notice or Short Notice to each Class Member.

29. "Objection Deadline" means 60 days after the Notice Deadline and is the date by which Settlement Class Members must mail their objection to the Settlement for that objection to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes.

30. "Opt-Out Deadline" means 60 days after the Notice Deadline and is the date by which Settlement Class Members must mail their Requests for Exclusion from the Settlement Class for that request to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes.

31. "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

32. "Preliminary Approval Order" means the Court order preliminarily approving the Settlement Agreement and ordering that Notice be provided to the Settlement Class. The Settling Parties' proposed form of Preliminary Approval Order is attached hereto as **Exhibit D**.

33. "Private Information" means names, Social Security numbers, driver's license numbers, state identification numbers, financial account details, full access credentials, and medical and health insurance information.

34. "Pro Rata Cash Payment" means a flat, pro rata cash Settlement Payment that Class

8

Members can claim under the Settlement.

35. "Reasonable Documentation" means documentation supporting a claim for Documented Monetary Loss(es) including, but not limited to, credit card statements, bank statements, invoices, telephone records, screen shots, and receipts. Documented Monetary Losses cannot be documented solely by a personal certification, declaration, or affidavit from the claimant; a Class Member must provide supporting Reasonable Documentation.

36. "Released Claims" means any and all past, present, and future rights, liabilities, actions, demands, damages, penalties, costs, attorneys' fees, losses, remedies, claims, and causes of action including, but not limited to, any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, including 15 U.S.C. §§ 45 *et seq.*, and all similar statutes in effect in any states in the United States; all state consumer protection statutes, including but not limited to the New Jersey Consumer Fraud Act and Washington Consumer Protection Act; violations of any federal or state data breach notification statute; negligence; negligence per se; breach of contract; breach of implied contract; breach of third-party beneficiary contract; breach of fiduciary duty; breach of confidence; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, existing or potential, accrued or unaccrued, fixed or

contingent, direct or derivative, and any other form of legal statutory, or equitable relief that either has been asserted, was asserted, or could have been asserted, by any Settlement Class Member against any of the Released Parties (including, but not limited to, assigned claims and any and all "Unknown Claims" as defined below) based on, relating to, concerning or arising out of the Data Incident or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation. Released Claims shall not include the right of any Settlement Class Member or any of the Released Parties to enforce the terms of the settlement contained in this Settlement Agreement and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class consistent with the terms and requirements of this Agreement.

37.    "Released Parties" means Healthcare Services Group, Inc. and each of its past, present, and future parent companies, partnerships, subsidiaries, affiliates, divisions, departments, employees, contractors, agents, servants, members, managers, providers, partners, principals, directors, officers, shareholders, successors, assigns, and owners, and all of their attorneys, advisors, consultants, vendors, heirs, executors, administrators, insurers, and agents and/or third-party administrators thereof, writing companies, coinsurers, reinsurers, joint ventures, personal representatives, predecessors, successors, transferees, trustees, and assigns, and including, without limitation, any Person related to any such entity who is, was, or could have been named as a defendant in the Litigation.

38.    "Releasing Parties" means Plaintiffs and Settlement Class Members and their respective past, present, and future heirs, beneficiaries, conservators, executors, estates, administrators, assigns, agents, accountants, financial and other advisors, and any other representatives of any of these persons and entities.

10

39. "Request for Exclusion" means the written communication by a Class Member in which he or she requests to be excluded or opt-out from the Settlement Class pursuant to the terms of this Agreement.

40. "Service Award" means the amount awarded by the Court and paid to each of the Class Representatives in recognition of their role in this Litigation, as set forth in Section X below.

41. "Settlement Class" means all living persons in the United States who were sent a notice from HCSG regarding potential impact from the Data Incident, or otherwise determined to have potentially had their Private Information impacted by the Data Incident. The Settlement Class specifically excludes Defendant HCSG, any entity in which it has a controlling interest, and HCSG's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter, members of their immediate families and their judicial staff, and persons who timely and validly excluded from the Settlement.

42. "Settlement Class Benefits" means all the benefits provided for under the Settlement, including but not limited to the amounts payable for Valid Claims for Pro Rata Cash Payments and Documented Monetary Losses, the costs associated with providing Credit Monitoring, and the business practices enhancements described in Paragraph 59.

43. "Settlement Fund" means a non-reversionary common fund in the amount of $3,000,000.00.

44. "Settlement Payment" means the cash compensation paid to Settlement Class Members who submit a Valid Claim for Documented Monetary Losses or a Pro Rata Cash Payment.

45. "Settlement Website" means the website that shall be available no later than the

11

Notice Deadline and shall remain accessible and operable for 3 months following the Court's grant of final settlement approval or termination of the Settlement, whichever occurs first.

46.     "Settling Parties" or "Parties" means, collectively, HCSG and Plaintiffs, individually and on behalf of the Settlement Class.

47.     "Short Notice" means the content of the postcard mailed notice to the proposed Settlement Class Members, substantially in the form as shown in **Exhibit E** attached hereto. The Short Notice will direct recipients to the Settlement Website and inform Settlement Class Members of, among other things, the Claims Deadline, the Opt-Out Deadline, the Objection Deadline, the requested attorneys' fees, and the date of the Final Fairness Hearing. The Short Notice shall also contain a "tear-off" summary claim form, with business reply mail (BRM) postage, that will allow Settlement Class Members to claim the *pro rata* cash payment and credit monitoring offered.

48.     "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including Plaintiffs, does not know or suspect to exist in his/her favor at the time of the release of the Released Parties that, if known by him or her, might have affected his or her settlement with, and release of, the Released Parties, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Plaintiffs intend to and expressly shall have, and each of the other Settlement Class Members intend to and shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by Cal. Civ. Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, Cal. Civ. Code §§ 1798.80 *et seq.*, Mont. Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or

equivalent to Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Settlement Class Members, including Plaintiffs, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiffs, expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims, including but not limited to any Unknown Claims they may have. The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

49.     "Valid Claims" means Settlement Claims in an amount approved by the Claims Administrator or found to be valid through the claims processing and/or dispute resolution process.

### III.     SETTLEMENT BENEFITS

50.     Settlement Fund. HCSG is responsible for paying a total sum of $3,000,000.00, which shall constitute the entire Settlement Fund. HCSG shall not be required to pay any additional amounts under this Settlement.

51.     Funding Schedule. Defendant shall fund, or cause to be funded, an initial payment of $365,000.00 to the Settlement Fund within 30 days after the later of: (i) entry of the Preliminary Approval Order or (ii) Defendant's receipt of payee instructions, a Form W-9 for the Settlement Fund, an invoice, and contact information to voice verify the payment instructions. Defendant shall

13

then fund, or cause to be funded, the remaining balance of the Settlement Fund no later than 30 days after the Effective Date.

52.    Disbursement Priority. The Settlement Fund shall be used to pay, in the following order: (1) all Claims Administration Expenses; (2) any Service Awards; (3) any attorneys' fees and litigation costs and expenses awarded to Class Counsel; and (4) Valid Claims for Settlement Class Benefits.

53.    Settlement Fund. The Settlement Fund shall be deposited into an appropriate qualified settlement fund (within the meaning of Treasury Regulation § 1.468 B-1) to be established by the Claims Administrator, and shall remain subject to the jurisdiction of the Court until the Settlement Fund is fully distributed in accordance with this Settlement Agreement or returned to those who paid the Settlement Fund in the event this Settlement Agreement is voided, terminated, or cancelled. Any interest that accrues on the Settlement Fund shall be the property of the Settlement Class and distributed in accordance with this Agreement.

54.    Settlement Class Benefits.    Settlement Class Members may elect to receive a payment for both a Pro Rata Cash Payment and payment for Documented Monetary Losses. In addition, all Settlement Class Members may elect to receive the Credit Monitoring benefit. Class Members seeking only to elect a Pro Rata Cash Payment and/or Credit Monitoring may do so by submitting only the tear-off portion of the Short Notice. All claims for Documented Monetary Losses require submission of the full Claim Form and must be supported by Reasonable Documentation. If a Class Member does not submit a Claim Form or submits a Request for Exclusion, the Class Member will release their claims against Defendant without receiving any Settlement Class Benefits.

55.    Documented Monetary Losses. Settlement Class Members may submit a claim for

a cash payment of up to $5,000.00 per Settlement Class Member for Documented Monetary Losses reasonably related to the Data Incident. To receive a payment for Documented Monetary Losses, a Settlement Class Member must attest under penalty of perjury that the losses or expenses were incurred as a result of the Data Incident and submit Reasonable Documentation supporting such losses. Documented Monetary Losses cannot be documented solely by a personal certification, declaration, or affidavit; a Settlement Class Member must provide actual supporting documentation of the loss. Documented Monetary Losses may include but are not limited to: (i) out-of-pocket credit monitoring costs that were incurred on or after September 27, 2024, through the Claims Deadline; (ii) unreimbursed losses associated with actual fraud or identity theft; and (iii) unreimbursed bank fees, long-distance phone charges, postage, or mileage for local travel at the prevailing IRS business-use mileage rate for the year incurred. This list of reimbursable Documented Monetary Losses is exemplary and not exhaustive. Settlement Class Members may make claims for any unreimbursed Documented Monetary Loss reasonably related to the Data Incident or to mitigating the effects of the Data Incident. Settlement Class Members shall not be reimbursed for any expenses for which they have been reimbursed for from another source, including any compensation provided in connection with a credit monitoring or identity theft protection services previously offered by Defendant or otherwise. If a Settlement Class Member does not submit Reasonable Documentation supporting a loss, or if their claim for a Documented Monetary Losses payment is rejected by the Claims Administrator in whole for any reason, and the Settlement Class Member fails to cure any deficiencies identified by the Claims Administrator, the claim shall be treated as a claim for a Pro Rata Cash Payment only.

56.    Pro Rata Cash Payment. In addition to Documented Monetary Losses, a Settlement Class Member may claim a Pro Rata Cash Payment. The amount of the Pro Rata Cash Payments

shall be calculated by evenly dividing the remaining balance of the Net Settlement Fund.

57.     Credit Monitoring. In addition to one or both Settlement Payments above, Settlement Class Members may claim three years of single-bureau Credit Monitoring, which will provide at least the following benefits: single-bureau credit monitoring, dark web monitoring, identity theft insurance coverage of up to $1,000,000.00, and fully managed identity recovery services.

58.     Distribution of Settlement Class Benefits: The Settlement is designed to exhaust the Settlement Fund. The Settlement Fund shall first be used to pay, in the following order: (i) Claims Administration Expenses (including Notice costs), (ii) any Court-awarded attorneys' fees and litigation costs and expenses, (iii) any Court-awarded Service Awards, and (iv) taxes, if applicable. The remaining amount is the Net Settlement Fund. The Claims Administrator will first apply the Net Settlement Fund to pay Valid Claims for Credit Monitoring and Documented Monetary Losses. The remaining amount in the Net Settlement Fund after all payments are made for Valid Claims for Credit Monitoring and Documented Monetary Losses payments shall then be divided by the number of Valid Claims for Pro Rata Cash Payments to calculate the amount for each Pro Rata Cash Payment pursuant to Paragraph 56.

In the event that the aggregate amount of all Credit Monitoring and Documented Monetary Losses payments exceeds the total amount of the Net Settlement Fund, then the amount of the Documented Monetary Losses payments to be paid to each Class Member shall be reduced, on a *pro rata* basis, and, if necessary, the duration of the Credit Monitoring benefit shall be reduced, such that the aggregate value of Valid Claims for Credit Monitoring and Documented Monetary Losses payments does not exceed the Net Settlement Fund. In such an event, no Net Settlement Funds will be distributed for Pro Rata Cash Payments. All such determinations shall be performed

by the Claims Administrator.

59.     <u>Business Practice Enhancements</u>. The Parties agree that as part of the Settlement consideration and in response to the Litigation, HCSG has adopted, paid for, implemented, and will maintain certain information-security-related business practice enhancements designed to further safeguard its systems. Prior to the Final Fairness Hearing, HCSG will describe these enhancements to Class Counsel in a confidential declaration, which may be submitted to the Court for *in camera* review upon request.

60.     <u>Duties of Claims Administrator</u>. The Claims Administrator shall perform the functions and duties necessary to effectuate the Settlement and as specified in this Agreement, including, but not limited to:

a)  Serving the CAFA Notice on the appropriate state and federal officials, as directed by HCSG;

b)  Administering and overseeing the Settlement Fund, including all funds provided by HCSG to pay Valid Claims;

c)  Obtaining the Class List for the purpose of disseminating Notice to Class Members;

d)  Performing National Change of Address (NCOA) searches and/or skip-tracing on the Class List;

e)  Providing Notice to Class Members via U.S. Mail and email;

f)  Establishing and maintaining the Settlement Website;

g)  Establishing and maintaining a toll-free telephone line for Class Members to call with Settlement-related inquiries, and answering such inquiries within one business day;

h) Responding to any mailed or emailed inquiries from Class Members within one business day;

i) Reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members and weekly transmitting to Class Counsel and Defendant's Counsel a list of Valid Claims;

j) Receiving Requests for Exclusion and objections and providing Class Counsel and Defendant's Counsel a copy thereof immediately upon receipt. If the Claims Administrator receives any Requests for Exclusion, objections, or other requests from Class Members after the Opt-Out Deadline and Objection Deadline, the Claims Administrator shall promptly provide copies thereof to Class Counsel and to Defendant's Counsel;

k) Coordinating with the Credit Monitoring provider to receive and distribute product activation codes within 30 days of the Effective Date;

l) After the Effective Date, processing and distributing Settlement Payments to Settlement Class Members;

m) Providing bi-weekly or other periodic reports to Class Counsel and Defendant's Counsel regarding Settlement Payments, including the number of Settlement Payments mailed, delivered, and cashed; undeliverable payments; and any other requested information;

n) In advance of the Final Fairness Hearing, preparing an affidavit to submit to the Court that: (i) attests to implementation of Notice in accordance with the Preliminary Approval Order; and (ii) identifies each Person who timely and properly submitted a Request for Exclusion; and

18

    o)   Performing any function related to claims administration at the agreed-upon instruction of Class Counsel or Defendant's Counsel, including, but not limited to, verifying that Settlement Payments have been distributed.

61.    <u>Limitation of Liability</u>. The Parties, Class Counsel, and Defendant's Counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the Claims Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iii) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; or (iv) the payment or withholding of any taxes and tax-related expenses.

62.    <u>Dispute Resolution for Claims</u>. The Claims Administrator, in its sole discretion to be reasonably exercised, will determine whether: (i) the claimant is a Settlement Class Member; (ii) the claimant has provided all necessary information to complete the Claim Form, including any Reasonable Documentation that may be necessary to support any claimed Documented Monetary Losses payment; and (iii) the information submitted could lead a reasonable person to conclude that more likely than not the claimant has suffered the claimed losses as a result of the Data Incident. In assessing what losses qualify as more likely than not caused by the Data Incident, the Claims Administrator will consider (i) whether the timing of the loss occurred on or after September 27, 2024; and (ii) whether the personal information used to commit identity theft or fraud consisted of the type of Private Information identified in HCSG's notices of the Data Incident. The Claims Administrator may, at any time, request from the claimant, in writing, additional information as the Claims Administrator may reasonably require to evaluate the claim, e.g., documentation requested on the Claim Form, and required documentation regarding the

19

claimed losses. The Claims Administrator's initial review will be limited to a determination of whether the claim is complete and plausible. Any claim determined to be implausible shall be submitted to counsel for the Parties for review. If, after meeting and conferring, the Settling Parties do not agree with the Claims Administrator's determination, the claim shall be referred to a mutually agreed-upon claims referee for final resolution.

63.      Upon receipt of an incomplete or unsigned Claim Form, or a Claim Form for a Documented Monetary Losses payment that is not accompanied by sufficient Reasonable Documentation to determine whether the claim is facially valid, the Claims Administrator shall request additional information and provide the claimant 21 days to cure the deficiency before rejecting the claim. Requests for claim supplementation shall be made within 30 days of receipt of the Claim Form or thirty 30 days from the Effective Date, whichever is later. In the event of unusual circumstances interfering with compliance during the 21-day period, the claimant may request an extension and, for good cause shown (illness, military service, international travel, mail failures, lack of cooperation by third parties in possession of required information, etc.), shall be given a reasonable extension; however, in no event shall the deadline be extended beyond 90 days from the Effective Date. If the deficiency is not timely cured, then the claim will be deemed invalid; provided, however, that claims for Documented Monetary Losses that are deficient and denied in whole will be deemed as claims for a Pro Rata Cash Payment, rather than being denied outright. Class Members who submit partially approved claims for Documented Monetary Losses that are not timely cured shall not automatically be considered for a Pro Rata Cash Payment unless they also elected the Pro Rata Cash Payment benefit on their Claim Form.

64.      Following receipt of additional information requested by the Claims Administrator, the Claims Administrator shall have 10 days to accept, in whole or lesser amount, or to reject each

20

claim. If, after review of the claim and all documentation submitted by the claimant, the Claims Administrator determines that such a claim is facially valid, then the claim shall be paid. If the Claims Administrator determines that such a claim is not facially valid because the claimant has not provided all information needed to complete the Claim Form and enable the Claims Administrator to evaluate the claim, then the Claims Administrator may reject the claim without any further action.

65.    If any dispute is submitted to a claims referee, the claims referee may approve the Claims Administrator's determination by making a ruling within 15 days of the claims referee's receipt of the dispute. The claims referee may make any other final determination of the dispute or request further supplementation of a claim within 30 days of the claims referee's receipt of the dispute. The claims referee's determination shall be based on whether the claims referee is persuaded that the claimed amounts are reasonably supported in fact and were more likely than not caused by the Data Incident. The claims referee shall have the power to approve a claim in full or in part. The claims referee's decision will be final and non-appealable. Any claimant referred to the claims referee shall reasonably cooperate with the claims referee, including by either providing supplemental information as requested or, alternatively, signing an authorization allowing the claims referee to verify the claim through third-party sources, and failure to cooperate shall be grounds for denial of the claim in full. The claims referee shall make a final decision within 30 days of the latter of the following events: its receipt of the submitted dispute and receipt of all supplemental information requested.

66.    <u>Review and Challenge of Claims Determinations</u>. Upon request by Class Counsel or Defendant's Counsel, the Claims Administrator shall provide all information gathered in connection with the claims investigation, including, without limitation, copies of all

correspondence, internal notes, the determinations made, and all reasons supporting such determinations. Class Counsel and Defendant's Counsel shall have the right, upon reasonable notice, to inspect all Claim Forms and supporting documentation received by the Claims Administrator.

67.    Either Party may challenge the approval or denial of any claim, and the Parties shall meet and confer with the Claims Administrator to resolve such challenge. If a challenge is not resolved or withdrawn following the meet-and-confer process, the Claims Administrator's decision shall be final and upheld.

## IV.    SETTLEMENT CLASS CERTIFICATION

68.    The Settling Parties agree, for purposes of this Settlement only, to the certification of the Settlement Class. If: (i) the Court does not issue the Preliminary Approval Order or the Judgment; (ii) the Effective Date does not occur; or (iii) this Settlement Agreement is terminated or cancelled pursuant to its terms, then this Settlement Agreement and the certification of the Settlement Class shall be vacated, and the Litigation shall proceed as if the Settlement Class had never been certified, without prejudice to the positions of any Person or the Settling Parties regarding class certification or any other issue. The Settling Parties' agreement to Settlement Class certification is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case, or action, as to which all such rights are specifically reserved.

## V.    PRELIMINARY APPROVAL AND NOTICE OF FAIRNESS HEARING

69.    Preliminary Approval. As soon as practicable after the execution of the Settlement Agreement, Class Counsel shall file an unopposed motion for preliminary approval of the Settlement with the Court, attaching a copy of this Settlement Agreement and requesting entry of a Preliminary Approval Order in the form attached hereto as **Exhibit D**, or an order substantially

similar to such form in both terms and cost, requesting, *inter alia:*

a) certification of the Settlement Class for settlement purposes only;

b) preliminary approval of the Settlement as set forth herein;

c) appointment of Andrew W. Ferich of Ahdoot & Wolfson, PC; Benjamin F. Johns of Shub Johns & Holbrook, LLP; and Charles E. Schaffer of Levin Sedran & Berman, LLP, as Class Counsel;

d) appointment of the Plaintiffs as Class Representatives;

e) approval of the Email Notice and Short Notice in the forms substantially similar to **Exhibit B** and **Exhibit E**, attached hereto;

f) approval of the Long Notice to be posted on the Settlement Website in a form substantially similar to **Exhibit C**, attached hereto, which, together with the Short Notice and Email Notice, shall include a summary of the Settling Parties' respective litigation positions; the material terms of the Settlement; instructions for how to object to or request exclusion from the Settlement; the procedures for submitting a claim; the requested attorneys' fees and litigation costs and expenses; and the date, time, and place of the Final Fairness Hearing;

g) approval of the Claim Form, to be available on the Settlement Website and mailed to Class Members upon request, in a form substantially similar to **Exhibit A**, attached hereto; and

h) appointment of Kroll as the Claims Administrator.

The Short Notice, Email Notice, Long Notice, and Claim Form shall be reviewed by the Claims Administrator and may be revised as agreed upon by the Settling Parties before such submissions to the Court for approval.

## VI.    NOTICE

70.    Notice shall be provided to Class Members by the Claims Administrator in a manner that satisfies constitutional due process requirements. The Notice plan shall be subject to approval by the Court as meeting the requirements of the Federal Rules of Civil Procedure and due process.

a)    Within 14 days after entry of the Preliminary Approval Order, HCSG shall provide the Class List to the Claims Administrator.

b)    The Claims Administrator shall provide direct and individual Notice to Class Members by Email Notice and, where email addresses are not available, Short Notice, to the extent mailing addresses are available, to the last known addresses for Class Members no later than the Notice Deadline. Those Class Members whose Email Notice bounces back or is undeliverable will be sent a Short Notice, to the extent the Claims Administrator can identify the postal address of the Class Member. Prior to mailing, the Claims Administrator shall check and update all addresses through the NCOA database. If a mailed Short Notice is returned with a forwarding address prior to the Claims Deadline, the Claims Administrator shall promptly forward the Notice to the forwarding address. Where Short Notices are returned as undeliverable with no forwarding address prior to the Claims Deadline, at the direction and discretion of the Parties, the Claims Administrator shall subject such returned Short Notices to an advanced address search process to ascertain a valid forwarding address and forward the Short Notice.

c)    If the Parties elect to re-mail returned Short Notices, the Claims Administrator shall remail the Short Notice to the updated address no later than 45 days before the

24

original date set for the Final Fairness Hearing. In lieu of re-mailing Short Notices, the Parties may elect alternative means of providing Notice to such Class Members.

d)    The Claims Administrator shall establish, maintain, and update the Settlement Website. The Settlement Website shall include copies of the Long Notice and Claim Form, as approved by the Court, as well as this Settlement Agreement and all its Exhibits. The Settlement Website shall also include copies of, or links to, relevant filings, including but not limited to the operative complaint; the motion for preliminary approval; the Preliminary Approval Order; the Motion for Attorneys' Fees, Costs, and Service Awards; and the motion for final approval.

e)    The Claims Administrator also shall establish a toll-free help line, staffed with a reasonable number of live operators, to respond to Settlement-related inquiries from Class Members.

f)    Upon request, the Claims Administrator shall provide copies of the Court-approved Short Notice, Long Notice, and Claim Form, as well as this Settlement Agreement.

g)    At the discretion of Class Counsel, and with notice to Defendant's Counsel, the Claims Administrator shall send a reminder notice to the Class Members who have not yet submitted a claim if, as of 30 days before the Claims Deadline, the claims rate is less than 3.0%.

h)    Before the Final Fairness Hearing, the Claims Administrator shall file with the Court an affidavit or declaration attesting to compliance with all Notice requirements. The Court-approved Email Notice, Short Notice, Long Notice, and Claim Form may be adjusted by the Claims Administrator in consultation with an agreement by the Settling Parties, as may be reasonable and necessary and not

materially inconsistent with the Court's approval.

Notice to the Class shall be paid for from the Settlement Fund in accordance with the Preliminary Approval Order, and the costs of such Notice, together with all other Claims Administration Expenses. Any attorneys' fees, costs, and expenses of Class Counsel, and any Service Awards to the Class Representatives, as approved by the Court, shall be paid from the Settlement Fund.

71.    Timing for Motion for Attorneys' Fees. No later than 14 days prior to the Objection Deadline, Class Counsel shall file their Motion for Attorneys' Fees, Costs, and Service Awards.

72.    Timing for Motion for Final Approval. No later than 14 days after the Objection Deadline, Plaintiffs and Class Counsel shall file a motion for final settlement approval, requesting that the Court enter final settlement approval and judgment, to be issued following the Final Fairness Hearing. In connection with the motion for preliminary approval, counsel for the Settling Parties shall request that the Court set a date for the Final Fairness Hearing that is no earlier than 120 days after entry of the Preliminary Approval Order.

## VII.    OPT-OUT PROCEDURES

73.    Requests for Exclusion. Any Person wishing to opt out of the Settlement Class must individually and timely submit a written Request for Exclusion to the designated Post Office Box established by the Claims Administrator. The request must clearly manifest a Person's intent to be excluded from the Settlement Class. To be effective, a Request for Exclusion must be postmarked no later than the Opt-Out Deadline, and must include the Person's full name, current address, telephone number, email address (if available), and be personally signed by the Person seeking exclusion.

74.    All Persons who submit valid and timely Requests for Exclusion shall not receive

26

any Settlement Class Benefits nor be bound by the terms of this Settlement Agreement. All Persons falling within the definition of the Class and who do not request to be excluded from the Settlement Class shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

75.    No Person shall purport to exercise any exclusion rights of any other Person, or purport to (i) opt out Class Members as a group, in the aggregate, or as a class involving more than one Class Member; or (ii) to opt out more than one Class Member on a single paper, or as an agent or representative. Any such purported requests to opt-out as a group or in the aggregate shall be void, and the Class Member(s) who is or are the subject of such purported Requests for Exclusion shall be treated as a Settlement Class Member and be bound by this Settlement Agreement, including the Release contained herein, and judgment entered thereon, unless he or she submits a valid and timely Request for Exclusion.

### VIII.    OBJECTION PROCEDURES

76.    Objections. Any Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely, written notice of their objection by the Objection Deadline. Such notice shall state: (i) the objector's full name, address, telephone number, and email address (if available); (ii) information identifying the objector as a Class Member, including proof that the objector is a member of the Class (e.g., copy of the Settlement notice, copy of original notice of the Data Incident); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the Class, or to the entire Class; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) a statement as to whether the objector and/or their counsel will appear at the Final Fairness Hearing; (vii) a list of all settlements to which the objector and/or their counsel have objected in the

27

preceding 5 years; and (viii) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation). Objections must be mailed to the Clerk of Court and the designated Post Office Box established by the Claims Administrator no later than the Objection Deadline. For an objection to be timely and considered by the Court, the objection must be submitted no later than the Objection Deadline, as specified in the Notice.

77.    <u>Waiver of Objections</u>. Any Settlement Class Member who fails to comply with the requirements for objecting in Paragraph 76 shall waive and forfeit any and all rights to appear separately or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Litigation. The procedures set forth in Paragraph 76 shall be the exclusive means for Class Members to challenge the Settlement Agreement.

## IX.    RELEASES

78.    Upon the Effective Date, and in consideration of the Settlement Class Benefits and other consideration described herein, the Releasing Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims including Unknown Claims, against each of the Released Parties. Further, upon the Effective Date, and to the fullest extent permitted by law, each Releasing Party, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted.

79.    Upon the Effective Date, HCSG shall be deemed to have, and by operation of the

Judgment shall have, fully, finally, and forever released, relinquished, and discharged, Plaintiffs, each and all of the Settlement Class Members and Plaintiffs' Counsel of all claims, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims, except for enforcement of the Settlement Agreement. Any other claims or defenses HCSG may have against such Persons including, without limitation, any claims based upon or arising out of any debtor-creditor, contractual, or other business relationship with such Persons that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims are specifically preserved and shall not be affected by the preceding sentence.

80. Notwithstanding any term herein, neither HCSG nor the Released Parties shall have or shall be deemed to have released, relinquished or discharged any claim or defense against any Person other than Plaintiffs, each and all of the Settlement Class Members, and Class Counsel.

## X. ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS

81. The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses, and/or Service Awards to the Class Representatives until after agreeing to all material terms of the Settlement.

82. Class Counsel may petition the Court for attorneys' fees not to exceed one-third of the Settlement Fund ($1,000,000.00), plus reimbursement of reasonable out-of-pocket litigation costs and expenses. Plaintiffs will also request payment of Service Awards in the amount of $2,500.00 to each of the four named Plaintiffs (total of $10,000.00). The Motion for Attorneys' Fees, Costs, and Service Awards shall be filed no later than 14 days prior to the Objection deadline.

83. Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved attorneys' fees and litigation costs and expenses

29

amongst themselves or other plaintiffs' counsel.

84.     Any award of attorneys' fees, costs, and expenses, and Service Awards to Plaintiffs, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. These payments will not in any way reduce the consideration being made available to the Settlement Class as described herein. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or Service Awards ordered by the Court to Class Counsel or Plaintiffs shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

85.     The amounts awarded for attorneys' fees, litigation costs and expenses, and Service Awards are payable from the Settlement Fund within 5 days after the Settlement Fund has been fully funded and the funds are available in accordance with the funding schedule set forth in Paragraph 51 of this Agreement.

## XI.    DISBURSEMENT OF SETTLEMENT CLASS BENEFITS

86.     The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members. The Claims Administrator's and claims referee's, as applicable, determination of whether a Settlement Claim is a Valid Claim shall be binding, subject to the dispute resolution process set forth herein. All claims agreed to be paid in full by HCSG shall be deemed a Valid Claim.

87.     Payment for Valid Claims shall be issued, via check or electronically (by preference of the Settlement Class Member), within 45 days after the Effective Date, or within 21 days of the date that the claim is approved, whichever is later.

88.     All Settlement Class Members who fail to timely submit a claim for any benefits

hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise expressly allowed by law or the Settling Parties' written agreement, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

89.     The Settlement Fund is non-reversionary. To the extent any funds remain in the Net Settlement Fund more than 120 days after the initial distribution of Settlement Payments, a subsequent Settlement Payment shall be made on a pro rata basis to all Class Members with Valid Claims for Pro Rata Cash Payments who negotiated (i.e., cashed or deposited) their initial Settlement Payment, provided that no supplemental payment shall be issued in an amount less than $3.00.

90.     If any amounts remain in the Net Settlement Fund 45 days following the expiration of the 120-day check negotiation period, and after all reasonable efforts to re-issue returned Settlement Payments have concluded and subject to Court approval, any residual funds shall be distributed to the International Association of Privacy Professionals Westin Scholarship Fund, as approved by the Court.

91.     No Person shall have any claim against the Claims Administrator, claims referee, HCSG, Released Parties, Class Counsel, Plaintiffs, Plaintiffs' Counsel, and/or Defendant's Counsel based on distributions of benefits to Settlement Class Members or any alleged failure by HCSG to implement the Business Practice Changes.

92.     Information submitted by Settlement Class Members in connection with submitted claims under this Settlement Agreement shall be deemed confidential and protected as such by the Claims Administrator, claims referee, Class Counsel, and Defendant's Counsel.

## XII.    CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION

93.    The Effective Date shall be the first business day after the date when each and of all the following conditions have occurred:

a)    This Settlement Agreement has been fully executed;

b)    the Court has entered the Preliminary Approval Order without material change;

c)    The Court-approved Email Notice or Short Notice has been sent and the Settlement Website has been duly created and maintained as ordered by the Court;

d)    HCSG has not exercised its option to terminate the Settlement Agreement;

e)    the Court has entered the Judgment granting final approval to the Settlement as set forth herein; and

f)    the Judgment has become Final.

94.    If all the conditions specified in Paragraph 91 are not satisfied, the Settlement Agreement shall be canceled and terminated unless Class Counsel and Defendant's Counsel mutually agree in writing to proceed with the Settlement.

95.    Within 7 days after the Opt-Out Deadline, the Claims Administrator shall furnish to Class Counsel and Defendant's Counsel a complete opt-out list of all timely and valid Requests for Exclusion.

96.    If, within 21 days after the Opt-Out Deadline, more than 750 Persons have submitted Requests for Exclusion, Defendant shall have the right to terminate the Settlement Agreement in its entirety.

97.    In the event that the Settlement Agreement or the releases are not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms: (i) the Settling Parties shall be restored to their respective positions in the Litigation and

shall jointly request that all scheduled Litigation deadlines be reasonably extended by the Court to avoid prejudice to any Settling Party or Settling Party's counsel; and (ii) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc.* Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses, and/or service awards shall constitute grounds for cancellation or termination of the Settlement Agreement. Further, notwithstanding any statement in this Settlement Agreement to the contrary, HCSG shall be obligated to pay amounts already billed or incurred for costs of notice to the Settlement Class, and Claims Administration, and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

## XIII.    MISCELLANEOUS

98.    The Settling Parties (i) acknowledge that it is their intent to consummate this Settlement Agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

99.    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The Settlement reflects the Settling Parties' compromises of claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the Settlement was negotiated in good faith by the Settling Parties and reflects a settlement that was

33

reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis. It is agreed that no Party shall have any liability to any other Party as it relates to the Litigation, except as set forth in the Settlement Agreement.

100.    Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Parties; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency, or other tribunal. Any of the Released Parties may file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

101.    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

102.    This Agreement constitutes a single, integrated written contract expressing the entire agreement between HCSG and Plaintiffs with respect to the matters set forth herein, and supersedes all prior negotiations, agreements, commitments, understandings, and writings between HCSG and Plaintiffs with respect to the matters set forth herein. Any subsequent agreements reached between HCSG, Plaintiffs, and any third party are expressly excluded from this provision..

103.    The Parties agree that they will make all reasonable efforts needed to reach the Effective Date and fulfill their obligations under this Agreement.

104.    Any headings contained herein are for informational purposes only and do not constitute a substantive part of this Agreement. In the event of a dispute concerning the terms and conditions of this Agreement, the headings shall be disregarded.

105.    The exhibits to this Agreement and any exhibits thereto are a material part of the Settlement and are incorporated and made a part of the Agreement.

106.    The Parties understand and agree that all terms of this Agreement, including the exhibits thereto, are contractual and are not a mere recitals, and each signatory warrants that they are competent and possess the full and complete authority to execute and covenant to this Agreement on behalf of the Party that they represent.

107.    Class Counsel are expressly authorized by Plaintiffs, on behalf of the Settlement Class, to take all appropriate actions required or permitted under this Settlement Agreement to effectuate its terms. Class Counsel are further authorized to agree to any reasonable modifications or amendments to the Settlement Agreement on behalf of the Settlement Class that they deem appropriate in order to carry out the spirit of this Settlement Agreement, provided that such modifications or amendments to not materially affect the rights of Settlement Class Members.

108.    Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto warrants that such Person has the full authority to do so.

109.    The Settlement Agreement may be executed in one or more counterparts. All executed counterparts shall be deemed to be the same instrument. Signatures transmitted by facsimile, electronic mail, or other electronic means shall be deemed original signatures for all purposes and shall have the same force and effect as original handwritten signatures. A complete

35

set of original executed counterparts shall be filed with the Court.

110.    The Settlement Agreement shall bind and inure to the benefit of the successors and assigns of the parties hereto. The Parties agree that the terms set forth in this Agreement shall survive the signing of this Agreement. No assignment of this Settlement Agreement will be valid without the other party's prior, written permission.

111.    The failure of a Party hereto to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement. In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

112.    All terms and conditions of this Agreement shall be governed by and interpreted according to the laws of the Commonwealth of Pennsylvania, without reference to its conflict of law provisions, except to the extent the federal law of the United States requires that federal law governs.

113.    Definitions apply to the singular and plural forms of each term defined. Definitions also apply to the masculine, feminine, and neuter genders of each term defined. Whenever the words "include," "includes" or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

114.    The Parties agree and acknowledge that this Agreement carries no precedential value.

115.    The Parties and their counsel believe this Agreement is a fair and reasonable compromise of the disputed claims, in the best interest of the Parties, and have arrived at this Agreement as a result of arm's-length negotiations with the assistance of an experienced mediator.

116.    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

117.    If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next Business Day. All reference to "days" in this Agreement shall refer to calendar days, unless otherwise specified. The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

118.    All dollar amounts are in United States Dollars (USD).

119.    All checks shall be void 90 days after issuance and shall bear the language: "This check must be cashed within 90 days, after which time it is void." Checks shall bear in the legend that they expire if not negotiated within 90 days of their date of issue. Checks that are not negotiated within 90 days of their date of issue shall not be reissued, unless a check is returned as undeliverable. Reissued checks shall be void on the stale date of the originally-issued check that was returned as undeliverable, or 30 days after reissuance, whichever is later. If a Settlement Class Member fails to cash a check issued under this Settlement Agreement before it becomes void, the Settlement Class Member will have failed to meet a condition precedent to recovery of Settlement Class Benefits, the Settlement Class Member's right to receive monetary relief under the Settlement shall be extinguished, and Defendant shall have no obligation to make payments to the Settlement Class Member for compensation or loss reimbursement or to make any other type of monetary relief to the Settlement Class Member. Such Settlement Class Members remain bound by all terms of the Settlement Agreement.

120.    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

121.    This Agreement shall be deemed to have been drafted by the Settling Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement. Plaintiffs and HCSG each acknowledge that each have been advised and are represented by legal counsel of their own choosing throughout the negotiations preceding execution of this Agreement and have executed the Agreement after having been so advised.

122.    Should any part, term, or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Settling Parties agree that the Court may modify such provision to the extent necessary to make it valid, legal, and enforceable. In any event, such provision shall be separable and shall not limit or affect the validity, legality or enforceability of any other provision hereunder.

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement as of the dates set forth below.

**PLAINTIFFS:**

*REBECCA RICHARDS*
_____
Rebecca Richards, Plaintiff

Date:_05 / 01 / 2026_____

_____
Harold Henderson, Plaintiff

Date:_____

_____
Stacy Petrillo, Plaintiff

Date:_____

38

Doc ID: cd1b21b2adc16667e2e93c2cabe133afb12a4e17

120.    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

121.    This Agreement shall be deemed to have been drafted by the Settling Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement. Plaintiffs and HCSG each acknowledge that each have been advised and are represented by legal counsel of their own choosing throughout the negotiations preceding execution of this Agreement and have executed the Agreement after having been so advised.

122.    Should any part, term, or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Settling Parties agree that the Court may modify such provision to the extent necessary to make it valid, legal, and enforceable. In any event, such provision shall be separable and shall not limit or affect the validity, legality or enforceability of any other provision hereunder.

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement as of the dates set forth below.

**PLAINTIFFS:**

_____
Rebecca Richards, Plaintiff

Date:_____

_____
Harold Henderson, Plaintiff

Date: 04 / 30 / 2026

_____
Stacy Petrillo, Plaintiff

Date:_____

38

Doc ID: 5aa49908f5b45de707901902a8155ffee7310a1f

120.    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

121.    This Agreement shall be deemed to have been drafted by the Settling Parties, and any rule that a document shall be interpreted against the drafter shall not apply to this Agreement. Plaintiffs and HCSG each acknowledge that each have been advised and are represented by legal counsel of their own choosing throughout the negotiations preceding execution of this Agreement and have executed the Agreement after having been so advised.

122.    Should any part, term, or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Settling Parties agree that the Court may modify such provision to the extent necessary to make it valid, legal, and enforceable. In any event, such provision shall be separable and shall not limit or affect the validity, legality or enforceability of any other provision hereunder.

IN WITNESS WHEREOF, the Settling Parties have executed this Settlement Agreement as of the dates set forth below.

**PLAINTIFFS:**

_____
Rebecca Richards, Plaintiff

Date:_____


_____
Harold Henderson, Plaintiff

Date:_____

*Stacy Petrillo*
_____
Stacy Petrillo, Plaintiff

Date:___4/30/2026_____

38

_Stanley Williamson_
Stanley Williamson (Apr 30, 2026 14:31:54 EDT)
_____
Stanley Williamson, Plaintiff

Date: 04/30/2026
_____


**COUNSEL FOR PLAINTIFFS AND THE PROPOSED SETTLEMENT CLASS:**


Date:    April 30, 2026

_____
Andrew W. Ferich (PA I.D. 313696)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650 Radnor, PA 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
aferich@ahdootwolfson.com

_____
Benjamin F. Johns (PA I.D. 201373)
**SHUB JOHNS & HOLBROOK LLP**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Telephone: (610) 477-8380
Facsimile: (856) 210-9088
bjohns@shublawyers.com

_____
Charles E. Schaffer (PA I.D. 76259)
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com


*Interim Co-Lead Class Counsel*


39

**DEFENDANT:**

Date: ___4/30/2026___

_____

Name  John Emslie
Title:  Deputy General Counsel

# EXHIBIT A

*00000000000000*

0 0 0 0 0 0 0 0 0 0 0 0 0

**Your Claim Form must be submitted online or postmarked by: <mark>Month XX, 2026</mark>**

# CLAIM FORM

*Williamson, et al. v. Healthcare Services Group, Inc.*
Case No. 2:25-cv-04908-JDW
United States District Court for the Eastern District of Pennsylvania

## GENERAL INSTRUCTIONS

If you were living in the United States and sent a notice from HCSG regarding potential impact from the Data Incident or were otherwise determined to have potentially had your Private Information impacted by the Data Incident, you may submit a Claim Form for Settlement Class Benefits from the above Settlement. Please refer to the Notice posted on the Settlement Website, **www.HealthcareServicesGroupSettlement.com**, for more information.

**To receive a Settlement Class Benefits, you must submit a Claim Form online or by mail no later than <mark>Month XX, 2026.</mark>**

This Claim Form may be mailed to the address below. Please type or legibly print all requested information in blue or black ink. Mail your completed Claim Form, postmarked by <mark>Month XX, 2026</mark>, by U.S. Mail to:

*Williamson, et al. v. Healthcare Services Group, Inc.*
c/o Kroll Settlement Administration LLC
P.O. Box 225391
New York, NY 10150-5391

**You may submit a claim for any or all of the following Settlement Class Benefits:**

Check the box(es) below to select the appropriate Settlement Class Benefit option(s):

**Documented Monetary Losses**: Up to $5,000 for unreimbursed documented monetary losses fairly traceable to the Data Incident. Reasonable Documentation must be provided. *See* Section III for more information.

**Pro Rata Cash Payment**: A *pro rata* (i.e., proportional) cash payment. The payment amount will depend on the number and value of Valid Claims received. No documentation is required.

**Credit Monitoring**: Three years of single-bureau Credit Monitoring services. If you choose to receive this benefit, you will receive a code to enroll in the program after final approval of the Settlement.

To receive Credit Monitoring services, you must provide an email address below.

## I. SETTLEMENT CLASS MEMBER INFORMATION

Provide your name and contact information below. You must notify the Claims Administrator if your contact information changes after you submit this Claim Form.

Enter the Class Member ID Number provided in your Notice. If you do not know your Class Member ID, you may contact the Claims Administrator at <mark>(XXX) XXX-XXXX</mark> or www.HealthcareServicesGroupSettlement.com.

**Class Member ID: 0 0 0 0 0** ___ ___ ___ ___ ___ ___ ___

\*0000000000000\*

0 0 0 0 0 0 0 0 0 0 0 0 0

| | |
|---|---|
| **First Name** | **Last Name** |

**Address 1**

**Address 2**

| | | |
|---|---|---|
| **City** | **State** | **Zip Code** |

**Email Address:** _____@_____._____

**Mobile Phone Number: ( ____ ____ ____ ) ____ ____ ____ - ____ ____ ____ ____**

## II. PAYMENT SELECTION

Select one of the following payment options to receive your payment:

PayPal        Venmo        Zelle        ACH        Check

*Note*: The easiest way to receive your payment through electronic transfer is to file your Claim Form online at **www.HealthcareServicesGroupSettlement.com** on or before <mark>Month XX, 2026</mark>. The website provides a step-by-step guide to select an electronic payment option. If you do not provide your mobile phone number or email address above, your payment will be sent by check to the address above.

## III. REIMBURSMENT FOR DOCUMENTED MONETARY LOSSES

Settlement Class Members may submit a claim for reimbursement of up to $5,000 for unreimbursed Documented Monetary Losses attributable to the Data Incident. Reasonable Documentation must be provided. Losses include, but are not limited to: (1) out-of-pocket credit monitoring costs that were incurred on or after September 27, 2024; (2) unreimbursed losses associated with actual fraud or identity theft; and (3) unreimbursed bank fees, long distance phone charges, postage, or mileage at the prevailing IRS business use mileage rate for the year incurred for local travel.

"Reasonable Documentation" means documentation supporting a claim for Documented Monetary Loss(es) including, but not limited to, credit card statements, bank statements, invoices, telephone records, screen shots, and receipts. Documented Monetary Losses cannot be documented solely by a personal certification, declaration, or affidavit from the claimant; a Class Member must provide supporting Reasonable Documentation.

If you do not submit Reasonable Documentation to support your claim for a Documented Monetary Losses or if your claim is rejected in whole by the Claims Administrator for any reason, and you fail to cure the deficiency, your claim will be rejected and treated as a claim for a Pro Rata Cash Payment.

You may not be reimbursed for expenses if you have already been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notice provided by HCSG or otherwise.

Payment amounts may be subject to adjustment based on the number and value of Valid Claims received.

\*00000\*

00000

\*CF\*

CF

Please confirm that you have attached documentation for your claim by checking the box below:

I have attached documentation showing that the Documented Monetary Losses listed below were attributable to the Data Incident.

| Cost Type (Fill all that apply) | Approximate Date of Loss | Amount of Loss | Description of Supporting Reasonable Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| Example: Credit Monitoring Service | 0 7/17/25 (mm/dd/yy) | $50.00 | Copy of credit monitoring service bill |
| | ___/___ ___/___ ___ (mm/dd/yy) | $_____._____ | |
| | __ ___/___ ___/___ ___ (mm/dd/yy) | $_____._____ | |
| | __ ___/___ ___/___ ___ (mm/dd/yy) | $_____._____ | |

## IV. ATTESTATION & SIGNATURE

I declare under penalty of perjury under the laws of the United States that the information supplied in this Claim Form is true and correct to the best of my knowledge and belief, and that this Claim Form was executed on the date below.

_____    ____ ____/____ ____/____ ____ ____ ____
Signature                                          Date (MM/DD/YYYY)

_____
Print Name

# EXHIBIT B

From:  Administrator@XXXX.com
To:      SettlementClassMemberName@domain.com
Re:      Legal Notice of Class Action Settlement – Healthcare Services Group Data Incident

---

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**

*Williamson, et al. v. Healthcare Services Group, Inc.,* Case No. 2:25-cv-04908-JDW
United States District Court for the Eastern District of Pennsylvania

**You are eligible for benefits from a class action settlement regarding a September 2024 Data Incident affecting Healthcare Services Group, Inc. ("HCSG").**

*A federal court authorized this Notice.*

*You are not being sued. This is not a solicitation from a lawyer.*

**Name:** <<First Name>> <<Last Name>>

**Class Member ID:** <<RefNum>>

A Settlement has been reached with Healthcare Services Group, Inc. (the "Defendant" or "HCSG") in a class action lawsuit about a cybersecurity incident (the "Data Incident") that occurred on or around September 27, 2024, that potentially exposed employee personally identifiable information ("Private Information"). This Private Information includes names, Social Security numbers, driver's license numbers, state identification numbers, financial account details, full access credentials, and medical and health insurance information. HCSG denies any and all wrongdoing.

**Am I included?** You are receiving this Email Notice because HCSG's records show you are a member of the Settlement Class. The Settlement Class consists of all living persons in the United States who were sent a notice from HCSG regarding potential impact from the Data Incident or were otherwise determined to have potentially had their Private Information impacted by the Data Incident.

**What does the Settlement provide?** If approved by the Court, the Defendant will pay $3,000,000 to resolve the Litigation. After deducting Claims Administrative Expenses, court-approved attorneys' fee, costs, and expenses, and Service Awards, the balance will be used to provide Settlement Class Benefits. Settlement Class Members may file a Claim Form to receive both (i) a payment of up to $5,000 for unreimbursed Documented Monetary Losses or (ii) a Pro Rata Cash Payment. Payment amounts may be adjusted based on the number of Valid Claims filed. Settlement Class Members may also choose to receive three (3) years of Credit Monitoring.

**How do I get Settlement Class Benefits?** You must file a Claim Form online at www.HealthcareServicesGroupSettlement.com or mail the attached Claim Form postmarked by Month XX, 2026 to receive Settlement Class Benefits. Claim Forms are also available on the Settlement Website or by calling (XXX) XXX-XXXX.

**What are my other options?** If you do nothing, you will not receive any Settlement Class Benefits, you will remain a Settlement Class Member, and you will give up your rights to sue HCSG for the claims resolved by this Settlement. If you do not want any Settlement Class Benefits, but you want to keep your right to sue HCSG for the claims resolved by this Settlement, you must

exclude yourself from the Settlement Class (called "opting out"). If you do not opt out, you may object to the Settlement and ask the Court for permission to speak at the Final Fairness Hearing. The Opt-Out and Objection Deadline is <mark>Month XX, 2026</mark>.

**The Court's Final Fairness Hearing.** The Court will hold a hearing on <mark>Month XX, 2026</mark>, to decide whether to approve the Settlement and up to $1,000,000 in attorneys' fees, plus reimbursement reasonable out-of-pocket litigation expenses, and a $2,500 Service Award to each of the four Class Representatives. You or your lawyer may attend the hearing at your own expense.

**For more information or to update your address:** Visit **www.HealthcareServicesGroupSettlement.com** for complete details about the Settlement and instructions on how to act on your rights and options. You may also call <mark>**(XXX) XXX-XXXX**</mark> for more information

# EXHIBIT C

<u>**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**</u>

United States District Court for the Eastern District of Pennsylvania
*Williamson, et al. v. Healthcare Services Group, Inc.*, Case No. 2:25-cv-04908-JDW

# If you received notice that your Private Information may have been impacted in a September 2024 Data Incident affecting Healthcare Services Group, Inc. ("HCSG"), you are eligible for benefits from a class action settlement.

*<u>A federal court authorized this Notice.</u>*

*<u>You are not being sued.</u>*

*<u>This is not a solicitation from a lawyer.</u>*

- A Settlement has been reached with Healthcare Services Group, Inc. (the "Defendant" or "HCSG") in a class action lawsuit about a cybersecurity incident (the "Data Incident") that occurred on or around September 27, 2024, that potentially exposed employee personally identifiable information ("Private Information"). This Private Information includes names, Social Security numbers, driver's license numbers, state identification numbers, financial account details, full access credentials, and medical and health insurance information. HCSG denies any and all wrongdoing.

- The Settlement Class includes all living persons in the United States who were sent a notice from HCSG regarding potential impact from the Data Incident or were otherwise determined to have potentially had their Private Information impacted by the Data Incident.

- If approved by the Court, HCSG will pay $3,000,000 into a Settlement Fund to resolve the Litigation. The Settlement Fund will provide benefits to Settlement Class Members including reimbursement of up to $5,000 of Documented Monetary Loss, Pro Rata Cash Payments, and three (3) years of Credit Monitoring services, as well as Settlement Administration Expenses, court-approved attorneys' fees, costs, and expenses, and Service Awards.

- Your rights are affected whether you do or do not act. Please read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM FORM** | The only way to receive benefits from this Settlement is to submit a valid and timely Claim Form. | **Month XX, 2026** |
| **OPT OUT OF THE SETTLEMENT** | If you opt out, you will not be bound by the terms of the Settlement and you keep the right to sue the Defendant about the claims resolved by this Settlement. You will not receive any Settlement Class Benefits. | **Month XX, 2026** |
| **OBJECT TO THE SETTLEMENT AND/OR ATTEND A HEARING** | If you do not opt out of the Settlement, you may object to it and tell the Court what you disagree with. You may also ask the Court for permission to speak at the Final Fairness Hearing. If you object, you may still submit a Claim Form to request Settlement Class Benefits. | **Month XX, 2026** |
| **DO NOTHING** | If you do nothing, you will not get any benefits and you give up the right to sue the Defendant about the claims resolved by this Settlement. | **No deadline** |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case must still decide whether to approve the Settlement.

**Questions? Call (XXX) XXX-XXXX or visit www.HealthcareServicesGroupSettlement.com.**

1

# <u>WHAT THIS NOTICE CONTAINS</u>

**Basic Information** — 3
1. Why was this Notice issued? — 3
2. What is this Litigation about? — 3
3. What is a class action? — 3
4. Why is there a settlement? — 3

**Who is in the Settlement?** — 3
5. Who is included in the Settlement? — 3
6. Are there exceptions to being included? — 3

**The Settlement Class Benefits** — 4
7. What does this Settlement provide? — 4
8. Tell me more about the Documented Monetary Losses Payment. — 4
9. Tell me more about the Pro Rata Cash Payment. — 4
10. Tell me more about the Credit Monitoring Services. — 4
11. How will payments be calculated? — 5
12. What claims am I releasing if I stay in the Settlement? — 5

**How to get Settlement Class Benefits – Making a Claim** — 5
13. How do I submit a Claim Form to get Settlement Class Benefits? — 5
14. When will I get Settlement Class Benefits? — 5

**The Lawyers Representing You** — 5
15. Do I have a lawyer in this case? — 5
16. Should I get my own lawyer? — 5
17. How will the lawyers be paid? — 6

**Excluding Yourself from the Settlement** — 6
18. How do I opt out of the Settlement? — 6

**Objecting to the Settlement** — 6
19. How do I tell the Court if I do not like the Settlement? — 6
20. What is the difference between objecting and opting out? — 7

**The Court's Final Fairness Hearing** — 7
21. When is the Court's Final Fairness Hearing? — 7
22. Do I have to come to the Final Fairness Hearing? — 7

**If You Do Nothing** — 7
23. What happens if I do nothing at all? — 7

**Getting More Information** — 7
24. How do I get more information? — 7

**Questions? Call (XXX) XXX-XXXX or visit www.HealthcareServicesGroupSettlement.com.**

### 1. Why was this Notice issued?

A Court authorized this Notice because you have a right to know about the proposed Settlement of this class action and about all of your options before the Court decides whether to grant final approval of the Settlement. This Notice explains the Litigation, your legal rights, what benefits are available, and who can receive them.

The Action is called *Williamson, et al. v. Healthcare Services Group, Inc.*, Case No. 2:25-cv-04908-JDW pending in the United States District Court for the Eastern District of Pennsylvania. The people who filed this Litigation are called the "Plaintiffs" and the company they sued, Healthcare Services Group, Inc. ("HCSG"), is called the "Defendant."

### 2. What is this Litigation about?

On or around October 7, 2024, HCSG became aware of potential unauthorized access of certain Private Information on HCSG's computer systems (the "Data Incident"). A subsequent investigation determined that the Data Incident potentially impacted consumers' personally identifiable information, including names, Social Security numbers, driver's license numbers, state identification numbers, financial account details, full access credentials, and medical and health insurance information ("Private Information"). Beginning on August 25, 2025, HCSG began sending notice about the Data Incident to impacted consumers. The Plaintiffs allege claims of negligence, breach of contract, unjust enrichment, and violations of the New Jersey Consumer Fraud Act and Washington Consumer Protection Act, among others. The Defendant denies all of the Plaintiffs' claims and maintains it did nothing wrong.

### 3. What is a class action?

In a class action, one or more individuals sue on behalf of other people with similar claims. These individuals who sue are known as "Class Representatives" or Plaintiffs. Together, the people included in the class action are called a "Settlement Class" or "Settlement Class Members." One court resolves the lawsuit for all Settlement Class Members, except for those who exclude themselves (sometimes called, "opting out") from a settlement. In this Settlement, the Class Representatives are Rebecca Richards, Harold Henderson, Stacy Petrillo, and Stanley Williamson.

### 4. Why is there a settlement?

The Court has not decided in favor of the Plaintiffs or the Defendant. The Defendant denies all claims and contends that it has not violated any laws. The Plaintiffs and Defendant agreed to a settlement to avoid the costs and risks of a trial, and through the Settlement, Settlement Class Members are eligible to claim benefits. The Plaintiffs and their attorneys, who also represent Settlement Class Members as "Class Counsel," believe the Settlement is in the best interests of all Settlement Class Members.

## WHO IS IN THE SETTLEMENT?

### 5. Who is included in the Settlement?

The Settlement Class includes all living persons in the United States who were sent a notice from HCSG regarding potential impact from the Data Incident or were otherwise determined to have potentially had their Private Information impacted by the Data Incident.

### 6. Are there exceptions to being included?

Yes. The Settlement Class specifically excludes Defendant HCSG, any entity in which it has a controlling interest, and HCSG's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Settlement Class are any judge, justice, or judicial officer presiding over this matter, members of their immediate families and their judicial staff, and all persons who validly exclude themselves from the Settlement Class.

**Questions? Call (XXX) XXX-XXXX or visit www.HealthcareServicesGroupSettlement.com.**

# THE SETTLEMENT CLASS BENEFITS

**7. What does the Settlement provide?**

Under the proposed Settlement, the Defendant will pay $3,000,000 into a Settlement Fund to resolve the Litigation. The Settlement Fund will provide benefits to Settlement Class Members including reimbursement of Documented Monetary Losses, Pro Rata Cash Payments, and three (3) years of Credit Monitoring, as well as Claims Administration Expenses and court-approved attorneys' fees, costs, and expenses, and Service Awards.

Settlement Class Members may submit a Claim Form to receive reimbursement of up to $5,000 for Documented Monetary Losses reasonably related to the Data Incident <u>and</u> a Pro Rata Cash Payment, as described below. Settlement Class Members may also submit a claim for three (3) years of Credit Monitoring.

HCSG has also adopted certain information security practice enhancements designed to further safeguard its systems.

**8. Tell me more about the payment for Documented Monetary Losses.**

Settlement Class Members may submit a claim for reimbursement of up to $5,000 for unreimbursed Documented Monetary Losses reasonably related to the Data Incident. Reasonable Documentation is required. Losses may include, but are not limited to:

- Out-of-pocket credit monitoring costs that were incurred on or after September 27, 2024, through the Claims Deadline;
- Unreimbursed losses associated with actual fraud or identity theft; and
- Unreimbursed bank fees, long-distance phone charges, postage, or mileage at the prevailing IRS business use mileage rate for the year incurred for local travel.

"Reasonable Documentation" means documentation supporting a claim for Documented Monetary Loss(es) including, but not limited to, credit card statements, bank statements, invoices, telephone records, screen shots, and receipts. Documented Monetary Losses cannot be documented solely by a personal certification, declaration, or affidavit from the claimant; a Class Member must provide supporting Reasonable Documentation.

If you do not submit Reasonable Documentation to support your claim for a Documented Monetary Losses or if your claim is rejected in whole by the Claims Administrator for any reason, and you fail to cure the deficiency, your claim will be rejected and treated as a claim for a Pro Rata Cash Payment.

You may not be reimbursed for expenses if you have already been reimbursed for the same expenses by another source, including compensation provided in connection with the credit monitoring and identity theft protection product offered as part of the notice provided by HCSG or otherwise.

Payment amounts may be subject to adjustment based on the number and value of Valid Claims received (see Question 11.)

**9. Tell me more about the Pro Rata Cash Payment.**

In addition to Documented Monetary Losses, you may submit claim for a Pro Rata Cash Payment. These pro rata (or proportional) payments will be calculated by evenly dividing the remaining balance of the Settlement Fund after payment of Claims Administration Expenses; court-approved Service Awards and attorneys' fees, costs, and expenses; Valid Claims for Documented Monetary Losses, and claims for Credit Monitoring. The calculation will be made after final approval of the Settlement. No documentation is required.

**10. Tell me more about the Credit Monitoring services.**

In addition to submitting a claim for a Documented Monetary Loss and/or a Pro Rata Cash Payment, you may claim three (3) years of one-bureau Credit Monitoring services, including dark web monitoring, identity theft insurance coverage for up to $1,000,000, and fully managed identity recovery services. If you submit a Valid Claim for Credit Monitoring, the activation code will be emailed to you after final approval

**Questions? Call (XXX) XXX-XXXX or visit www.HealthcareServicesGroupSettlement.com.**

of the Settlement. Please check the Settlement Website (www.HealthcareServicesGroupSettlement.com) for updates.

| 11. How will payment amounts be calculated? |
| --- |

If the amount of Valid Claims exhausts the balance of the Settlement Fund after court-approved costs, fees, and awards have been deducted, the amounts of the Documented Monetary Loss may be reduced on a pro rata (or proportional) basis. For purposes of calculating any necessary pro rata decrease, the Claims Administrator will distribute the balance of the Settlement Fund first for payment of Valid Claims for Documented Monetary Loss, then for claims for Credit Monitoring, before making any Pro Rata Cash Payments. Any pro rata increases or decreases to payment amounts will be on an equal percentage basis. Payment calculations will be made after final approval of the Settlement.

| 12. What claims am I releasing if I stay in the Settlement? |
| --- |

Unless you opt out of the Settlement, you may not sue, continue to sue, or be part of any other lawsuit against the Defendant concerning any of the legal claims this Settlement resolves. The Release section in the Settlement Agreement describes the legal claims that you give up if you remain in the Settlement Class. The Settlement Agreement is available at **www.HealthcareServicesGroupSettlement.com**.

## HOW TO GET SETTLEMENT CLASS BENEFITS – MAKING A CLAIM

| 13. How do I submit a Claim Form to get Settlement Class Benefits? |
| --- |

To file a claim, you must submit a Claim Form, with any required Reasonable Documentation, by **Month XX, 2026**. Claim Forms may be submitted online at **www.HealthcareServicesGroupSettlement.com**, or mailed postmarked by **Month XX, 2026** to the Claims Administrator at:

*Williamson, et al. v. Healthcare Services Group, Inc.*
c/o Kroll Settlement Administration
P.O. Box 225391
New York, NY 10150-5391

| 14. When will I get Settlement Class Benefits? |
| --- |

The short answer is – after the Settlement is "finally approved" and any challenges to that approval are finally resolved. The Court is scheduled to hold a Final Fairness Hearing on **Month XX, 2026**, to decide whether to approve the Settlement, the attorneys' fees, expenses, and costs for Class Counsel for representing the Settlement Class, and the Service Awards for the Class Representatives who brought this Litigation on behalf of the Settlement Class.

If the Court approves the Settlement, there may be appeals. It is always uncertain whether appeals will be filed and, if so, how long it will take to resolve them. Settlement Class Benefits will be distributed as soon as possible, if and when the Court grants final approval of the Settlement and after any appeals are resolved.

## THE LAWYERS REPRESENTING YOU

| 15. Do I have a lawyer in this case? |
| --- |

Yes, the Court appointed Andrew W. Ferich of Ahdoot & Wolfson, PC, Benjamin F. Johns of Shub Johns & Holbrook LLP, and Charles E. Schaffer of Levin Sedran & Berman, LLP to represent you and other members of the Settlement Class as Class Counsel. You will not be charged directly for these lawyers' services; instead, they will receive compensation from the Settlement Fund, subject to Court approval. If you want to be represented by your own lawyer, you may hire one at your own expense.

**16. Should I get my own lawyer?**

It is not necessary to hire your own lawyer because Class Counsel works for you. If you want to be represented by your own lawyer, you may hire one at your own expense.

**17. How will the lawyers be paid?**

Class Counsel will ask the Court to approve attorneys' fees up to one-third of the Settlement Fund ($1,000,000) plus reasonable out-of-pocket litigation expenses, as well as a $2,500 Service Award for each of the four (4) Class Representatives. If approved, these amounts will be paid from the Settlement Fund before distributing Settlement Class Benefits to Settlement Class Members who submit Valid Claims.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

**18. How do I opt out of the Settlement?**

If you do not want to receive any Settlement Class Benefits, and you want to keep your right to separately sue the Defendant about the legal issues in this case, you must take steps to exclude yourself from the Settlement Class. This is called "opting out" of the Settlement Class. The Opt-Out Deadline to submit a "Request for Exclusion" from the Settlement is **Month XX, 2026**.

To exclude yourself from the Settlement, your written Request for Exclusion must include the following:

- A statement that you want to be excluded from the Settlement Class, such as, "I request to be excluded from the Settlement Class in *Williamson, et al. v. Healthcare Services Group*, *Inc*., Case No. 2:25-cv-04908-JDW";

- Your name, current address, telephone number, and email address (if any); and

- Your signature.

Your Request for Exclusion must be mailed to the Claims Administrator at the address below, postmarked no later than **Month XX, 2026**.

*Williamson, et al. v. Healthcare Services Group*, *Inc*.
c/o Kroll Settlement Administration
ATTN: Request for Exclusion
P.O. Box 225391
New York, NY 10150-5391

"Mass" or "group" opt outs are not permitted under the Settlement Agreement.

## OBJECTING TO THE SETTLEMENT

**19. How do I tell the Court if I do not like the Settlement?**

If you are a Settlement Class Member, you may choose (but are not required) to object to the Settlement if you do not like it or a portion of it, whether that be to the Settlement Class Benefits; the request for Service Awards and attorneys' fees, costs, and expenses, the Releases provided to the Defendant, or some other aspect of the Settlement. Through an objection, you give reasons why you think the Court should not approve the Settlement.

To be considered by the Court, your objection must include:

- The case name and number, *Williamson, et al. v. Healthcare Services Group*, *Inc*., Case No. 2:25-cv-04908-JDW;

- Your full name, address, telephone number, and e-mail address (if any);

- Proof that you are a member of the Settlement Class (e.g., copy of notice, copy of original notice of the Data Incident);

**Questions? Call (XXX) XXX-XXXX or visit www.HealthcareServicesGroupSettlement.com.**

6

- A written statement of all grounds for the objection, accompanied by any legal support for the objection you believe to be applicable;

- A statement as to whether the objection applies only to you, to a specific subset of the Settlement Class, or to the entire Settlement Class;

- The identity of any and all attorney(s) representing you in connection with the objection;

- A statement as to whether you and/or your attorney(s) will appear at the Final Fairness Hearing;

- A list of all settlements to which you and/or your attorney have objected in the preceding five (5) years; and

- Your signature and the signature of your duly authorized attorney or other duly authorized representative (along with documentation of that representation).

Objections must be mailed to the Clerk of Court and the Claims Administrator, postmarked by **Month XX, 2026**, at the following addresses:

| Clerk of Court | Claims Administrator |
|---|---|
| Clerk of Court | Williamson, et al. v. Healthcare Services Group, Inc. |
| James A. Byrne U.S. Courthouse | c/o Kroll Settlement Administration |
| 601 Market Street, Room 2609 | ATTN: Objections |
| Philadelphia, PA 19106-1797 | P.O. Box 225391 |
| | New York, NY 10150-5391 |

### 20. What is the difference between objecting and opting out?

Objecting is telling the Court that you do not like something about the Settlement. You may object to the Settlement only if you do not exclude yourself from it. Excluding yourself from the Settlement means telling the Court you do not want to be part of the Settlement Class. If you exclude yourself or opt out of the Settlement, you may not object to it because the Settlement no longer affects you.

## THE COURT'S FINAL FAIRNESS HEARING

### 21. When is the Court's Final Fairness Hearing?

The Court is scheduled to hold a Final Fairness Hearing on **Month XX, 2026 at XX:X0 x.m. ET**, at the **United States District Court for the Eastern District of Pennsylvania, Courthouse Name, Street Address, City, PA Zip Code,** to decide whether to approve the Settlement; attorneys' fees, costs, and expenses of up to $1,000,000, plus reasonable out-of-pocket litigation expenses, for Class Counsel for representing the Settlement Class; and the a $2,500 Service Award for the each of the four (4) Settlement Class Representatives who brought this Litigation on behalf of the Settlement Class. The date and time of this hearing may change without further notice. For updates, check **www.HealthcareServicesGroupSettlement.com**.

### 22. Do I have to come to the Final Fairness Hearing?

No. Class Counsel will answer any questions the Court may have. You may attend the Final Fairness Hearing at your own expense. If you file an objection, you may, but are not required to, attend to the Final Fairness Hearing to talk about your objection. If you file your written objection on time and in accordance with the requirements above, the Court will consider it even if you do not attend the hearing. You may also pay your own lawyer to attend, but it is not necessary.

**Questions? Call (XXX) XXX-XXXX or visit www.HealthcareServicesGroupSettlement.com.**

## IF YOU DO NOTHING

**23. What happens if I do nothing at all?**

If you are a Settlement Class Member and you do nothing, you will give up your right to start a lawsuit, continue a lawsuit, or be part of any other lawsuit against the Defendant and the Released Parties, as defined in the Settlement Agreement, about the legal issues resolved by this Settlement. In addition, you will be bound by the Releases in the Settlement and will not be eligible to receive any Settlement Class Benefits.

## GETTING MORE INFORMATION

**24. How do I get more information?**

This Notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at the Settlement Website, **www.HealthcareServicesGroupSettlement.com**.

If you have additional questions or need to update your address, you may contact the Claims Administrator by telephone at **(XXX) XXX-XXXX**, by email at XXXXX.com, or by mail:

*Williamson, et al. v. Healthcare Services Group, Inc.*
c/o Kroll Settlement Administration LLC
P.O. Box 225391
New York, NY 10150-5391

**Questions? Call (XXX) XXX-XXXX or visit www.HealthcareServicesGroupSettlement.com.**

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| REBECCA RICHARDS, HAROLD HENDERSON, STACY PETRILLO, and STANLEY WILLIAMSON, individually and on behalf of all others similarly situated, | Case No. 2:25-cv-04908-JDW |
| Plaintiffs, | **CLASS ACTION** |
| v. | |
| HEALTHCARE SERVICES GROUP, INC., | |
| Defendant. | |

**[PROPOSED] ORDER GRANTING PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

The Court, having considered all matters submitted to it at the preliminary approval hearing and otherwise, and finding no just reason for delay in entry of this Preliminary Approval Order,[1] and good cause appearing therefore, and having considered the papers filed and proceedings held in connection with the Settlement, having considered all the other files, records, and proceedings in the Action, and being otherwise fully advised,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

**PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

1.     The Settlement Agreement, attached to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval") as **Exhibit 1** is incorporated fully herein by reference.

---

[1] Unless otherwise indicated or defined separately herein, all capitalized terms share the same definitions as those terms are defined in the Settlement Agreement (SA, Section II, Definitions).

2. The Court has jurisdiction over the claims at issue in this lawsuit, Plaintiffs Rebecca Richards, Harold Henderson, Stacy Petrillo, and Stanley Williamson, individually and on behalf of all others similarly situated, and Defendant Healthcare Services Group, Inc.

3. This Order is based on Fed. R. Civ. P. 23.

4. The Court finds that the Parties' Settlement is fair, reasonable, and adequate, and falls within the range of possible approval, and was entered into after extensive, arm's-length negotiations, such that it is hereby preliminarily approved and Notice of the Settlement should be provided to the Settlement Class.

## **PROCEDURAL HISTORY**

5. This case arises from a Data Incident experienced by HCSG between September 27, 2024, and October 3, 2024, during which an unauthorized third-party potentially gained access to HCSG's computer systems.

6. Beginning in August of 2025, numerous putative class actions were filed in this Court on behalf of persons whose information was compromised as part of the Data Incident. The Plaintiffs in these cases allege, *inter alia*, that HCSG failed to take reasonable measures to safeguard the sensitive data entrusted to it. The Court entered an order on October 21, 2025, consolidating the related actions (ECF No. 17), and, following contested leadership proceedings, the Court appointed Andrew W. Ferich of Ahdoot & Wolfson, PC, Benjamin F. Johns of Shub Johns & Holbrook LLP, and Charles Schaffer of Levin Sedran & Berman LLP, as interim co-lead counsel pursuant to Fed. R. Civ. P. 23(g). ECF No. 24.

7. Plaintiffs filed the operative Consolidated Class Action Complaint ("Complaint") on December 19, 2025. ECF No. 25. The Complaint asserts various common law and statutory causes of action relating to the alleged harms caused as a result of the Data Incident. *Id.* The Parties

agreed to attend mediation, and on January 5, 2026, and the Court approved a stipulation to stay the litigation. ECF No. 27.

8.      Following all-day mediation on March 11, 2026, with mediator Bennett Picker of the law firm Stradley Ronon Stevens & Young, LLP—a highly respected data breach litigation mediator—the Parties reached a settlement in principle to resolve this litigation on a class-wide basis. Thereafter, the Parties finalized and memorialized the Settlement Agreement and the Motion for Preliminary Approval.

## **SETTLEMENT BENEFITS**

9.      The Settlement negotiated on behalf of the Class provides for a $3,000,000 non-reversionary Settlement Fund that will be used to pay for Claims Administration Expenses and Notice costs, taxes, and any Court approved Service Awards, attorneys' fees, and litigation expenses. The remaining amount in the Net Settlement Fund will be used to pay for Valid Claims submitted by Class Members for Settlement Benefits. Settlement Class Members may submit a Claim Form for the following Settlement Benefits:

a.    Documented Monetary Losses Payment: Class Members may submit a Claim Form for a Documented Monetary Losses payment, seeking up to $5,000 per person for the reimbursement of Documented Monetary Losses supported by Reasonable Documentation. Documented Monetary Losses must be supported sufficiently to show that the claimed loss is more likely than not a result of the Data Incident. The Claims Administrator will review these claims for compliance with the requirements of the Settlement Agreement. Any claim for a Documented Monetary Losses payment that is rejected in whole, if not timely and properly cured, will be considered for a Pro Rata Cash Payment by the Claims Administrator. Class Members who submit Documented Monetary Losses payment claims that are partially approved, and not timely and

3

validly cured, will not be considered for Pro Rata Cash Payments unless those Class Members also separately elect that Settlement Payment, as per the terms of the Settlement Agreement.

b. <u>Pro Rata Cash Payment</u>: Class Members also may elect to receive a *pro rata* flat cash payment (i.e., a Pro Rata Cash Payment). The actual amount a Class Member will receive for this Settlement Payment may be more or less depending on the number of Valid Claims submitted.

c. <u>Credit Monitoring</u>: In addition to electing one or both of the Settlement Payment options, Class Members may claim three years of single-bureau Credit Monitoring that will provide at least the following benefits: single-bureau credit monitoring, dark web monitoring, identity theft insurance coverage for up to $1,000,000.00, and fully managed identity recovery services.

10. <u>Business Practice Enhancements</u>: In addition to the monetary Settlement Benefits, the Parties agree that as part of the Settlement consideration and in response to the Litigation, HCSG has adopted, paid for, implemented, and will maintain certain business practice enhancements designed to further safeguard Private Information on its systems. Prior to the Final Fairness Hearing, HCSG will describe these enhancements to Class Counsel in a confidential declaration, which may be submitted to the Court for *in camera* review upon request.

11. The Settlement Fund shall be used to make payments for the following: (i) Notice and Claims Administration Expenses; (ii) attorneys' fees and litigation costs and expenses; (iii) Valid Claims for Documented Monetary Losses payments, up to $5,000 per claimant; (iv) Valid Claims for Pro Rata Cash Payments; (v) the costs of Credit Monitoring; (vi) any Service Awards; and (vii) taxes.

12. The Settlement Fund is non-reversionary. To the extent any funds remain in the Net Settlement Fund more than 120 days after the distribution of Settlement Payments, a subsequent

Settlement Payment shall be made on a pro rata basis to all Class Members with Valid Claims for Pro Rata Cash Payments who negotiated (i.e., cashed or deposited) their initial Settlement Payment, assuming such payment is over $3.00. Should any amounts remain in the Net Settlement Fund, 100% of the amount remaining in the Net Settlement Fund 45 days following the check negotiation period and after all efforts to re-send returned Settlement payments have concluded, shall be given to the to the International Association of Privacy Professionals Westin Scholarship Fund.

## **SETTLEMENT CLASS CERTIFICATION**

13.    For purposes of settlement only, the Court provisionally certifies the Settlement Class, defined as follows:

> All living persons in the United States who were sent a notice from HCSG regarding potential impact from the Data Incident, or otherwise determined to have potentially had their Private Information impacted by the Data Incident. The Settlement Class specifically excludes Defendant HCSG, any entity in which it has a controlling interest, and HCSG's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter, members of their immediate families and their judicial staff, and Class Members who timely and validly request to be excluded from the Settlement.

14.    The Court provisionally finds, pursuant Fed. R. Civ. P. 23(a) and (b), for settlement purposes only, that: (a) the Settlement Class is so numerous that joinder of all Class Members is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the Class Representatives' claims are typical of the claims of the Settlement Class; (d) the Class Representatives and Class Counsel will fairly and adequately protect the interests of the Settlement Class; and (e) the Court finds that the questions of law or fact common to the Class Members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**CLASS COUNSEL AND THE CLASS REPRESENTATIVES**

15.    Plaintiffs are hereby provisionally designated and appointed as the Class Representatives. The Court provisionally finds that the Class Representatives are similarly situated to absent Class Members and are typical of the Settlement Class, and, therefore, they will be adequate Class Representatives.

16.    The Court finds that Andrew W. Ferich of Ahdoot & Wolfson, PC, Benjamin F. Johns of Shub Johns & Holbrook LLP, and Charles Schaffer of Levin Sedran & Berman LLP are experienced and adequate counsel, were previously appointed as interim co-lead class counsel, and are provisionally designated as Class Counsel.

**NOTICE TO SETTLEMENT CLASS**

17.    No later than 30 days after the entry of the Preliminary Approval Order (i.e., the Notice Deadline), or such other time as may be ordered by the Court, the Claims Administrator shall disseminate the Notice to the Settlement Class as follows:

a.    For any Class Member for whom an email address is reasonably available, the Claims Administrator will send the Email Notice via email;

b.    For any Class Member for whom a physical address is reasonably available, the Claims Administrator will send the Short Notice (in postcard form) by U.S. Mail, postage prepaid;

c.    In the event the Claims Administrator transmits a Notice via U.S. Mail, then the Claims Administrator shall perform any further investigations deemed appropriate by the Claims Administrator, including using the National Change of Address (NCOA) database maintained by the United States Postal Service, in an attempt to identify current mailing addresses for individuals whose names are provided by HCSG;

6

d.      For any Notice that has been mailed via U.S. Mail and returned by the Postal Service as undeliverable, the Claims Administrator shall re-mail the Short Notice to the forwarding address, if any, provided by the Postal Service on the face of the returned mail;

e.      At the direction and discretion of the Parties, the Claims Administrator shall perform reasonable address traces for those postcard Short Notices that are returned as undeliverable. If the Parties elect remailing, then no later than 45 days before the original date set for the Final Fairness Hearing, the Claims Administrator shall complete the re-mailing of the Short Notice to those Class Members whose new addresses were identified as of that time through address traces. The Parties have the discretion to elect alternative means of Class Member notice in lieu of re-mailing postcard notices;

f.      At the discretion of Class Counsel, and with notice to Defendant's Counsel, the Claims Administrator shall send a reminder notice to the Class Members who have not yet submitted a claim if, as of 30 days before the Claims Deadline, the claims rate is less than 3.0%; and

g.      Neither the Parties nor the Claims Administrator shall have any other obligation to re-mail individual notices that have been mailed.

18.      Prior to any dissemination of the Notice and prior to the Notice Deadline, the Claims Administrator shall cause the Settlement Website to be launched on the internet. The Claims Administrator shall create, maintain, and periodically update the Settlement Website. The Settlement Website shall contain information regarding how to submit Claim Forms (including submitting Claims Forms electronically through the Settlement Website) and relevant documents, including, but not limited to, the Long Notice, the Claim Form, the Settlement Agreement, the Preliminary Approval Order, the operative Complaint, the motion for attorneys' fees, costs, and

Service Awards; and the motion for final approval, as well as the date, time, and place of the Final Fairness Hearing. The Settlement Website shall also include a toll-free telephone number and mailing address through which Class Members may contact the Claims Administrator directly.

19.     The Long Notice, Short Notices (including the postcard Notice and Email Notice), and Claim Form, are constitutionally adequate and are hereby approved. The Notice contains all essential elements required to satisfy federal statutory requirements and due process. The Court further finds that the form, content, and method of providing the Notice, as described in the Settlement Agreement, including the exhibits thereto: (a) constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated to apprise Class Members of the pendency of the Litigation, the terms of the Settlement, their rights under the Settlement, including, but not limited to, their rights to object to or request exclusion from the Settlement; and (c) are reasonable and constitute due, adequate, and sufficient notice to all Class Members.

20.     The Notice plan set forth in the Settlement Agreement provides the best notice practicable under the circumstances, and is hereby approved.

21.     The Claims Administrator is directed to carry out Notice and the Notice plan, as set forth in the Settlement Agreement.

## OPT-OUT AND OBJECTIONS

22.     Class Members may submit a request to opt-out or object to the Settlement within 60 days after the Notice Deadline. Any Class Member may submit a request to opt-out of the Settlement at any time prior to the Opt-Out Deadline by adhering to the requirements of the Settlement Agreement. Any individual in the Settlement Class who does not timely and validly request to opt-out shall be bound by the terms of the Settlement Agreement even if he or she does not submit a Valid Claim.

8

23.     Opt-outs may only be on an individual basis, and no person may request to be excluded from the Settlement Class through "mass" or "class" opt-outs. Any Class Member who timely requests exclusion shall not: (i) be bound by any final approval order or the judgment; (ii) be entitled to the Settlement Benefits under the Settlement Agreement; (iii) gain any rights by virtue of the Settlement Agreement; or (iv) be entitled to object to any aspect of the Settlement Agreement.

24.     Any Class Member who wishes to object shall submit a timely written notice of his or her objection by the Objection Deadline, which is within 60 days after the Notice Deadline.  For an objection to be considered by the Court, the objection must comply with all requirements set forth in the Settlement Agreement. All objections must be filed or postmarked on or before the Objection Deadline.

25.     Any Class Member who does not make their objections in the manner and by the date set forth in the Settlement Agreement shall be deemed to have waived any objections and shall be forever barred from raising such objections in this or any other action or proceeding, absent further order of the Court.

26.     Without limiting the foregoing, any challenge to the Settlement Agreement, this Preliminary Approval Order, and the final approval order and judgment shall be pursuant to the applicable appellate rules and not through a collateral attack.

### ADMINISTRATION OF SETTLEMENT

27.     The Class Representatives, Class Counsel, and HCSG and its counsel have created a process for assessing the validity of claims and a payment methodology to Class Members who submit timely, valid Claim Forms. The Court hereby preliminarily approves the Settlement

9

Benefits to the Settlement Class and the plan for distributing the Settlement Benefits as described in the Settlement Agreement.

28.    The Court appoints Kroll as the Claims Administrator.

29.    The Court directs that the Claims Administrator effectuate the distribution of Settlement Benefits according to the terms of the Settlement Agreement, should the Settlement be finally approved.

30.    Class Members who qualify for Settlement Benefits and who wish to submit a Claim Form shall do so in accordance with the requirements and procedures specified in the Notice.

31.    If the final approval order and judgment are entered, all Class Members who fail to submit a claim in accordance with the requirements and procedures specified in the Notice, and who do not timely exclude themselves from the Settlement Class, shall be forever barred from receiving any payments or benefits pursuant to the Settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the final approval order and judgment.

32.    The Settlement Fund shall be used by the Claims Administrator to pay for: (1) Settlement Benefits to those Class Members who submit a Valid Claim; (2) any Service Awards awarded to the Class Representatives; (3) any attorneys' fees and costs/expenses awarded to Class Counsel; (4) all Notice costs and Claims Administration Expenses; and (5) applicable taxes, pursuant to the terms and conditions of the Settlement Agreement.

10

**FINAL APPROVAL HEARING**

33.    A Final Fairness Hearing shall be held [no earlier than 120 days after entry of this Order] on _____, 2026 at 3810 U.S. Courthouse, 601 Market Street, Philadelphia, Pennsylvania 19106, Courtroom 3-B, to be noticed on the Settlement Website.

34.    The Court may require or allow the Parties and any objectors to appear at the Final Fairness Hearing either in person or by telephone or videoconference.

35.    At or following the Final Fairness Hearing, the Court will determine whether to enter the final approval order and judgment, and whether to grant the motion for attorneys' fees, litigation expenses, and Service Awards. Such proposed final approval order shall, among other things: (a) determine that the Settlement is fair, adequate, and reasonable; (b) finally certify the Settlement Class for settlement purposes only; (c) determine that the Notice plan satisfies Due Process requirements; (d) bar and enjoin all Releasing Parties from asserting any of the Released Claims at any time and in any jurisdiction, including during any appeal from the final approval order, bar and enjoin all Releasing Parties from pursuing any Released Claims against Released Parties at any time and in any jurisdiction, including during any appeal from the final approval order, and retain jurisdiction over the enforcement of the Court's injunctions; (e) release Defendant and the Released Parties from the Released Claims; and (f) reserve the Court's continuing and exclusive jurisdiction over the Parties to the Settlement Agreement, including Defendant, Plaintiffs, all Class Members, and all objectors, to administer, supervise, construe, and enforce the Agreement in accordance with its terms.

36.    Class Counsel shall file a motion for attorneys' fees, litigation costs and expenses, and Service Awards no later than 14 days prior to the Objection Deadline.

11

37.     Class Counsel shall file a motion for final approval of the Settlement no later than 14 days after the Objection Deadline.

## TERMINATION

38.     This Order shall become null and void and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions, if the Settlement is not finally approved by the Court or is terminated in accordance with the terms of the Settlement Agreement.

39.     In the event this Agreement is terminated or fails to become effective, then the Parties shall return to the *status quo ante* in the Litigation as if the Parties had not entered into this Agreement, and the parties shall jointly file a status report in the Court seeking to reopen the Action and all papers filed. In such event, the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used in this case or in any other action or proceeding for any other purpose, and any order entered by this Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

40.     In the event the Settlement Agreement is terminated or fails to become effective, all funds in the Settlement Fund shall be promptly returned to Defendant. However, Defendant shall have no right to seek from Plaintiffs, Class Counsel, or the Claims Administrator the Claims Administration Expenses and Notice costs paid by or on behalf of Defendant. After payment of any Claims Administration Expenses that have been incurred and are due to be paid from the Settlement Fund, the Claims Administrator shall promptly return the balance of the Settlement Fund to Defendant following termination.

41.     In the event of a termination, the Agreement shall be considered null and void; all of Plaintiffs', Class Counsel's, Defendant's, and Defendant's Counsel's obligations under the

12

Settlement shall cease to be of any force and effect; and the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all the Parties' respective pre-Settlement rights, claims, and defenses will be retained and preserved.

42.     In the event the Settlement is terminated in accordance with the provisions of the Agreement, any discussions, offers, or negotiations associated with the Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose. In such event, all Parties to the Action shall stand in the same position as if the Agreement had not been negotiated, made, or filed with the Court.

43.     This order shall have no continuing force or effect if final judgment is not entered and shall not be construed or used as an admission, concession, or declaration by or against HCSG of any fault, wrongdoing, breach, liability, or the certifiability of any class.

## SUMMARY OF DEADLINES

44.     The preliminarily approved Settlement shall be administered according to its terms pending the Final Fairness Hearing. Deadlines arising under the Settlement and this Order include, but are not limited to:

| | |
|---|---|
| Defendant shall prepare and provide the Class List to the Claims Administrator | Within 14 days after the Court enters the Preliminary Approval Order [_____, 2026] |
| Notice Deadline for initial Settlement Class Notice | Within 30 days after entry of the Preliminary Approval Order [_____, 2026] |
| Deadline to File Motion for Attorneys' Fees, Litigation Expenses, and Service Awards | At least 14 days prior to the Objection Deadline [_____, 2026] |
| Deadline to File Requests for Exclusion and Objections to Settlement | 60 days after the Notice Deadline [_____, 2026] |
| Deadline to file Motion for Final Approval of Settlement | Within 14 days after the Objection Deadline [_____, 2026] |

13

| | |
|---|---|
| Deadline to File Claim Form (i.e., Claims Deadline) | 90 days after the Notice Deadline [_____, 2026] |
| Final Approval Hearing date | No earlier than 120 days after entry of the Preliminary Approval Order [_____, 2026] |

**IT IS SO ORDERED, ADJUDGED, AND DECREED:**

Date: _____, 2026

_____
HONORABLE JOSHUA D. WOLSON
UNITED STATES DISTRICT JUDGE

14

# EXHIBIT E

*Williamson v. Healthcare Services Group, Inc.*
c/o Kroll Settlement Administration LLC
P.O. Box 225391
New York, NY 10150-5931

FIRST-CLASS MAIL
U.S. POSTAGE PAID
CITY, ST
PERMIT NO. XXXX

**ELECTRONIC SERVICE REQUESTED**

<<Refnum Barcode>>

Class Member ID: <<Refnum>>

**Postal Service: Please do not mark or cover**

<<FirstName>> <<LastName>>
<<Address>>
<<Address2>>
<<City>>, <<ST>> <<Zip>>-<<zip4>>
<<Country>>

---

NOTICE OF CLASS ACTION
SETTLEMENT

**You are eligible for benefits from a class action settlement regarding the Healthcare Services Group, Inc. ("HCSG") Data Incident.**

**www.HealthcareServicesGroupSettlement.com**

A Settlement has been reached with Healthcare Services Group, Inc. (the "Defendant" or "HCSG") in a class action lawsuit about a cybersecurity incident (the "Data Incident") that occurred on or around September 27, 2024, that potentially exposed the personally identifiable information ("Private Information") of consumers. This Private Information includes names, Social Security numbers, driver's license numbers, state identification numbers, financial account details, full access credentials, and medical and health insurance information. HCSG denies any and all wrongdoing.

**Am I included?** You are receiving this Notice because HCSG's records show you are included in the Settlement Class. The Settlement Class consists of all living persons in the U.S. who were sent a notice from HCSG regarding potential impact from the Data Incident or were otherwise determined to have potentially had their Private Information impacted by the Data Incident.

**What does the Settlement provide?** If approved by the Court, the Defendant will pay $3,000,000 to resolve the Litigation. After deducting Claims Administration Expenses, court-approved attorneys' fee, costs, and expenses, and Service Awards, the balance will be used to provide Settlement Class Benefits. Settlement Class Members may file a Claim Form to receive both (i) a payment of up to $5,000 for unreimbursed Documented Monetary Losses or (ii) a Pro Rata Cash Payment. Payment amounts may be adjusted based on the number of Valid Claims submitted. Settlement Class Members may also choose to receive three (3) years of Credit Monitoring.

**How do I get Settlement Class Benefits?** You must file a Claim Form online at www.HealthcareServicesGroupSettlement.com or by mail postmarked by Month XX, 2026, to receive Settlement Class Benefits. Claim Forms are also available on the Settlement Website or by calling (XXX) XXX-XXXX.

**What are my other options?** If you do nothing, you will not receive any Settlement Class Benefits, you will remain a Settlement Class Member, and you will give up your rights to sue HCSG for the claims resolved by this Settlement. If you do not want any Settlement Class Benefits, but you want to keep your right to sue HCSG for the claims resolved by this Settlement, you must exclude yourself from the Settlement Class (called "opting out"). If you do not opt out, you may object to the Settlement and ask the Court for permission to speak at the Final Fairness Hearing. The Opt-Out and Objection Deadline is Month XX, 2026.

**The Court's Final Fairness Hearing.** The Court will hold a hearing on Month XX, 2026, to decide whether to approve the Settlement and up to $1,000,000 in attorneys' fees, plus reimbursement reasonable litigation expenses, and a $2,500 Service Award to each of the four Class Representatives. You or your lawyer may attend the hearing at your own expense.

**For more information or to update your address:** Visit **www.HealthcareServicesGroupSettlement.com** for complete details about the Settlement and instructions on how to act on your rights and options. You may also call **(XXX) XXX-XXXX** or email XXXXX.com for more information.

_____

_____

_____

BRM
Postage

*Williamson, et al. v. Healthcare Services Group, Inc.*
c/o Kroll Settlement Administration LLC
P.O. Box 225391
New York, NY 10150-5391

<<Barcode>>

Class Member ID: <<Refnum>>

### **POSTCARD CLAIM FORM**

Claim Forms must be postmarked no later than **Month XX, 2026**.

**Documented Monetary Losses**: You MUST submit a Claim Form online or use the full Claim Form available on the Settlement Website to make a claim for Documented Monetary Losses.

Class Member ID: <<refnum>>
<<firstname>> <<mi>> <<lastname>>
<<address1>> <<address2>> <<City>>,
<<State>> <<Zip>>

| If different from the preprinted data on the left, please print your correct mailing address information. |
| --- |
| Address |
| City                                        State        Zip Code |

Check the box next to the benefit(s) you are claiming:

You may claim both the Pro Rata Cash Payment and Credit Monitoring.

    **Credit Monitoring**: I want to receive three (3) years of Credit Monitoring (must provide an email address below).
    **Pro Rata Cash Payment**: I want to receive a *pro rata* (proportional) cash payment.*
    *Payment amount to be determined after all costs, fees, and awards have been paid and all Valid Claims are submitted.

Select one of the following payment options to receive your payment:     PayPal     Venmo     Zelle     ACH     Check

**Required for electronic payment: Mobile Number: _____** or **Email: _____**

By signing below, I swear and affirm under the laws of the United States that the information I have supplied in this Claim Form is true and correct to the best of my recollection.

| **Signature**: | **Date (MM/DD/YYYY)**: |
| --- | --- |