**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| REBECCA RICHARDS, HAROLD HENDERSON, STACY PETRILLO, and STANLEY WILLIAMSON, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>HEALTHCARE SERVICES GROUP, INC.,<br><br>          Defendant. | Case No. 2:25-cv-04908-JDW<br><br>**CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND**
**SERVICE AWARDS**

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................ 1

II.  FACTUAL BACKGROUND AND RELEVANT HISTORY ........................................ 3

    A.  Class Counsel's Work to Secure Benefits for the Class ............................... 3

    B.  The Class Representatives' Participation........................................................ 6

III. ARGUMENT .................................................................................................. 7

    A.  The Court Should Approve the Requested Attorneys' Fees ........................... 7

        1.  The Attorneys' Fees Are Reasonable Under the *Gunter*/*Prudential* Factors ......... 8

            i.    *Gunter* Factor 1: The Size of the Fund Created and Number of Persons Benefitted .......................................................................... 8

            ii.   *Gunter* Factor 2: Presence or Absence of Substantial Objections by Class Members ................................................................. 10

            iii.  *Gunter* Factor 3: The Skill and Efficiency of the Attorneys........................ 11

            iv.   *Gunter* Factor 4: The Complexity and Duration of the Litigation............... 11

            v.    *Gunter* Factor 5: The Risk of Nonpayment ................................................. 12

            vi.   *Gunter* Factor 6: The Amount of Time Devoted by Plaintiffs' Counsel ..... 13

            vii.  *Gunter* Factor 7: Awards in Similar Cases .................................................. 14

            viii. *Prudential* Factor 1: Value of Class Benefits Attributable to the Work of Class Counsel as Opposed to the Efforts of Others .................................... 14

            ix.   *Prudential* Factor 2: Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Agreement .......... 15

            x.    *Prudential* Factor 3: Any "Innovative" Terms of the Settlement................ 15

        2.  The Requested Fee Is Reasonable Under a Lodestar Cross-Check ..................... 16

    B.  The Expense Reimbursement Request Is Reasonable ................................. 18

    C.  The Requested Service Awards Are Reasonable........................................ 19

IV.  CONCLUSION.............................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Acevedo v. Brightview Landscapes, LLC*,
  No. 13-cv-2529, 2017 WL 4354809 (M.D. Pa. Oct. 2, 2017) .................................................. 19

*Ahrendsen v. Prudent Fiduciary Servs., LLC*,
  No. 21-cv-2157, 2023 WL 4139151 (E.D. Pa. June 22, 2023).................................................. 7

*Anaya v. Cencora, Inc.*,
  No. 24-cv-02961 (E.D. Pa. Feb. 11, 2026) ............................................................................. 17

*Barletti v. Connexin Software, Inc.*,
  No. 22-cv-04676 (E.D. Pa.) ................................................................................................. 9, 20

*Bianucci v. Rite Aid Corp.*,
  No. 24-cv-03356, 2025 WL 2166015 (E.D. Pa. July 30, 2025) ................................ 5, 7, 17, 20

*Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*,
  513 F. Supp. 2d 322 (E.D. Pa. 2007) ...................................................................................... 10

*Breneman v. Keystone Rural Health Center d/b/a Keystone Health*,
  No. 23-cv-618 (Pa. Ct. Com. Pl., Franklin Cnty. Aug. 15, 2023) ........................................ 9, 14

*Brown v. Esmor Corr. Servs.*,
  No. 98-cv-1282, 2005 WL 1917869 (D.N.J. Aug. 10, 2005) .................................................... 18

*Cantave v. Saint Joseph's Univ.*,
  No. 23-cv-3181, 2024 WL 4829718 (E.D. Pa. Nov. 19, 2024) ..................................... 7, 19, 20

*Corra v. ACTS Ret. Servs., Inc.*,
  No. 22-cv-2917, 2024 WL 22075 (E.D. Pa. Jan. 2, 2024)............................................ 13, 14, 15

*Erby v. Allstate Fire and Casualty Ins. Co.*,
  No. 18-cv-04944 (E.D. Pa. Oct. 24, 2022) ......................................................................... 17, 18

*Fulton-Green v. Accolade, Inc.*,
  No. 18-cv-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019)................................. 12, 13, 16, 17

*Galt v. Eagleville Hosp.*,
  310 F. Supp. 3d 483 (E.D. Pa. 2018) ...................................................................................... 14

*Glaberson v. Comcast Corp.*,
  No. 03-cv-6604, 2015 WL 5582251 (E.D. Pa. Sept. 22, 2015)................................................ 19

*Gordon v. Chipotle Mexican Grill, Inc.*,
  No. 17-cv-01415, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ....................................... 12, 20

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000)................................................................................................*passim*

*Hensley v. Eckerhart*,
  61 U.S. 424 (1983)................................................................................................................ 16

*In re Aetna Inc.*,
  No. MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ........................................................ 19

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*,
  263 F.R.D. 226 (E.D. Pa. 2009)................................................................................................ 19

*In re AT & T Corp.*,
  455 F.3d 160 (3d Cir. 2006)............................................................................................... 15, 16

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*,
  582 F.3d 524 (3d Cir. 2009)................................................................................................... 8

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*,
  553 F. Supp. 2d 442 (E.D. Pa. 2008) ..................................................................................... 15

*In re Enzo Biochem Data Security Litig.*,
  No. 23-cv-04282 (E.D.N.Y.) ................................................................................................... 9

*In re Forefront Dermatology Data Breach Litig.*,
  No. 21-cv-887 (E.D. Wis.)...................................................................................................... 9

*In re Gateway Rehab. Ctr. Data Breach Litig.*,
  No. GD-22-14713 (Pa. Ct. Com. Pl., Allegheny Cnty. Mar. 10, 2025)................................... 14

*In re Imprelis Herbicide Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  296 F.R.D. 351 (E.D. Pa. 2013)............................................................................................. 17

*In re Ins. Brokerage Antitrust Litig.*,
  297 F.R.D. 136 (D.N.J. 2013)................................................................................................ 15

*In re loanDepot Data Breach Litig.*,
  No. 24-cv-00136 (C.D. Cal. Aug. 25, 2025)........................................................................... 17

*In re NCB Management Services, Inc. Data Breach Litig.*,
  No. 23-cv-01236 (E.D. Pa.) ................................................................................................... 9

*In re Onix Grp., LLC Data Breach Litig.*,
  2024 WL 5107594 (E.D. Pa. Dec. 13, 2024)...................................................................*passim*

iii

*In re Philadelphia Inquirer Data Sec. Litig.*,
No. 24-cv-2106, 2025 WL 845118 (E.D. Pa. Mar. 18, 2025) ............................................ 14, 17

*In re Philips Recalled CPAP, Bi-Level PAP, & Mech. Ventilator Prods. Litig.*,
347 F.R.D. 113 (W.D. Pa. 2024) .......................................................................... 7, 8, 15

*In re Processed Egg Prods. Antitrust Litig.*,
No. 08-md-2002, 2012 WL 5467530 (E.D. Pa. Nov. 9, 2012).................................................. 17

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)...................................................................................... 7, 8, 18

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
No. 13-md-2445, 2024 WL 815503 (E.D. Pa. Feb. 27, 2024)............................. 8, 12, 16, 17, 18

*In re Wright & Fillipis LLC Data Breach*,
No. 22-cv-12908 (E.D. Mich.)...................................................................................... 9

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
No. 16-md-02752, 2020 WL 4212811 (N.D. Cal. July 22, 2020)*, aff'd*, No. 20-cv-16633,
2022 WL 2304236 (9th Cir. June 27, 2022) .............................................................. 20

*Johnson v. Cmty. Bank*, *N.A.*,
No. 12-cv-01405, 2013 WL 6185607 (M.D. Pa. Nov. 25, 2013)................................................ 9

*Katz v. DNC Servs. Corp.*,
No. 16-cv-5800, 2024 WL 454942 (E.D. Pa. Feb. 6, 2024)...................................................... 18

*Lake Forest Partners, L.P. v. Sprint Commc'ns Co. L.P.*,
No. 12-cv-00999, 2013 WL 3048919 (W.D. Pa. June 17, 2013) ............................................ 11

*McCoy v. Health Net, Inc.*,
569 F. Supp. 2d 448 (D.N.J. 2008) ...................................................................... 15, 16

*Meigs v. Care Providers Ins. Servs., LLC*,
No. 21-cv-867, 2024 WL 21792 (E.D. Pa. Jan. 2, 2024)........................................................ 16

*Moore v. Indep. Blue Cross, LLC*,
No. 23-cv-0566, 2024 WL 4756903 (E.D. Pa. Nov. 12, 2024) ................................................ 18

*Rouse v. Comcast Corp.*,
No. 14-cv-1115, 2015 WL 1725721 (E.D. Pa. Apr. 15, 2015)................................................ 10

*Se. Pennsylvania Transportation Auth. v. Orrstown Fin. Servs., Inc.*,
No. 12-cv-00993 (M.D. Pa. May 19, 2023)........................................................................ 17

*Segebarth v. CertainTeed LLC*,
No. 19-cv-05500 (E.D. Pa. Jan. 31, 2023).......................................................................... 17

*Serano v. Sterling Testing Sys., Inc.*,
   711 F. Supp. 2d 402 (E.D. Pa. 2010) ...................................................................... 7

*Sorace v. Wells Fargo Bank, N.A.*,
   No. 20-cv-4318, 2024 WL 643229 (E.D. Pa. Feb. 15, 2024), ), *aff'd*, No. 24-cv-1498,
   2024 WL 5116797 (3d Cir. Dec. 16, 2024) ............................................................ 18

*Stechert v. Travelers Home & Marine Ins. Co.*,
   No. 17-cv-0784, 2022 WL 2304306 (E.D. Pa. June 27, 2022) ................................ 10

*Stevens v. SEI Invs. Co.*,
   No. 18-cv-4205, 2020 WL 996418 (E.D. Pa. Feb. 28, 2020) .................................... 7

*Sweda v. Univ. of Pennsylvania*,
   No. 16-cv-4329, 2021 WL 5907947 (E.D. Pa. Dec. 14, 2021) ................................ 19

*Whiteley v. Zynerba Pharms., Inc.*,
   No. 19-cv-4959, 2021 WL 4206696 (E.D. Pa. Sept. 16, 2021) ............................... 16

**Rules**

Fed. R. Civ. P. 23 ..............................................................................................*passim*

## I.  INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23 and the Class Action Settlement Agreement and Release ("Settlement Agreement" or "SA"), Plaintiffs[1] seek an order approving payment from the Settlement Fund of (a) $1,000,000 in attorneys' fees; (b) $15,612.23 in litigation expenses and costs; and (c) Service Awards in the amount of $2,500 to each of the four Class Representatives ($10,000 total). The $3,000,000 non-reversionary Settlement Fund is an extraordinary result considering the significant litigation risks faced by Plaintiffs. Class Counsel expended extensive efforts and resources over the course of a year of litigation to arrive at this result, which compares favorably and is superior to settlements in similar data breach litigation.

Class Counsel's efforts in this matter began a year ago, in August 2025, after the Data Incident became public. The Data Incident exposed approximately 625,091[2] individuals' Private Information. Thereafter, several putative class actions were filed in this Court alleging that HCSG failed to take reasonable measures to adequately safeguard the sensitive information with which it was entrusted. Plaintiffs' counsel combined and worked cooperatively to consolidate the related matters, and obtained this Court's approval to lead the litigation pursuant to Fed. R. Civ. P. 23(g) after which Class Counsel filed the Consolidated Complaint (ECF No. 25) ("CC").

When the Parties finally agreed to attempt to resolve this matter, they spent many weeks preparing for mediation. The Parties prepared mediation statements and engaged in significant pre-mediation discovery to support their respective positions in the mediation.

---

[1] The Parties filed the Settlement Agreement on May 1, 2026. *See* ECF No. 34-2. Capitalized terms shall have the same meaning as assigned to them in the Settlement Agreement.

[2] This initial head count has been deduplicated through the settlement administration process. In total, 624,652 notices were sent to Class Members.

On March 11, 2026, the Parties participated in a mediation with Bennett G. Picker of Stradley Ronon Stevens & Young LLP, during which they reached a settlement in principle to resolve this Litigation on a classwide basis. ECF No. 34-3 ("Prelim. Appr. Decl.") ¶ 10. Following the mediation, the Parties continued negotiating for many weeks until they were able to finalize all the details of the Settlement and memorialize the SA and its exhibits. *Id.* ¶ 12. Class Counsel also conducted confirmatory discovery to verify the fairness of the Settlement, and they submit that the Settlement is fair, reasonable, and adequate, and in the best interest of Plaintiffs and the Class Members. *Id.* ¶¶ 13, 19.

Although the deadlines to object to or request exclusion from the Settlement (September 4, 2026) and to submit claims (October 1, 2026) have not yet passed, the reaction by Class Members to the Settlement thus far has been overwhelmingly positive. As of August 7, 2026, 14,815 claims have been submitted, no Class Members have requested exclusion from the Settlement, and no objections have been filed. Class Counsel expects that many additional claims will be submitted by the deadline, and that their efforts will remain extensive for months to come as Class Members continue to participate in the Settlement process.

The amount requested for attorneys' fees, litigation expenses and costs, and Service Awards was fully disclosed in the Settlement Notice and on the Settlement Website. The requested amounts satisfy the applicable *Gunter/Prudential* factors, are supported by both a percentage-of-the-fund and lodestar analysis, and are consistent with amounts approved by this Court and other courts in similar data breach settlements. They are further supported by Class Counsel's efforts in this litigation and the excellent outcome attained for the Settlement Class.

2

For these reasons, and those outlined below, Plaintiffs respectfully submit that this motion should be granted. A proposed final approval order addressing this motion and the requests herein will be submitted in connection with the forthcoming motion for final approval of the Settlement.

## II. FACTUAL BACKGROUND AND RELEVANT HISTORY

The litigation history, settlement negotiations, and terms of the Settlement are set forth in detail in the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 34-1) and are incorporated by reference here. This memorandum focuses on the efforts of Class Counsel and Plaintiffs in achieving the result obtained in this case.

### A. Class Counsel's Work to Secure Benefits for the Class

Class Counsel are highly experienced practitioners with years of collective experience in litigating complex data breach and data privacy class actions. *See, e.g.*, ECF No. 18, Exs. A-C. Due in part to their expertise in this area, Class Counsel were able to efficiently and effectively litigate this Action and had the credibility necessary to negotiate an excellent settlement on behalf of the Settlement Class. As noted above, Class Counsel have worked for a year on a contingent basis, without compensation or reimbursement for the time and out-of-pocket expenses incurred in furtherance of this Litigation and Settlement. Joint Declaration of Class Counsel in Support of Motion for Attorneys' Fees, Costs, and Service Awards ("Joint Counsel Fee Decl."), attached as **Exhibit 1**, ¶¶ 5–11. If Class Counsel did not successfully resolve this matter, they would have received no compensation for their efforts.

Class Counsel invested substantial resources into the investigation, discovery, litigation, and settlement of this Action. Many of the tasks performed by Class Counsel are not evident based solely on a review of the docket, as much of the litigation took place outside of the courtroom.

3

Prior to reaching the Settlement, Class Counsel independently filed separate complaints and numerous other complaints were filed. Class Counsel subsequently combined their efforts and engaged in private ordering to secure the support of all Plaintiffs to lead this Litigation for the collective benefit of the Class Members. On September 4, 2025, the numerous related cases were consolidated. ECF No. 8. On November 24, 2025, the Court appointed Interim Co-Lead Counsel. ECF No. 24. Plaintiffs filed the CC on December 19, 2025. ECF No. 25.

Class Counsel contributed extensive time, effort, and resources to the litigation, including, but not limited to, the following pre-mediation efforts:

- Researched, investigated, and drafted the initial complaints;

- Voluntarily coordinated and engaged in private ordering and filed a motion to consolidate the three pending actions and appoint interim co-lead counsel;

- Met and conferred with Defendant's counsel to negotiate a schedule for the consolidated complaint and motion to dismiss briefing;

- Researched, investigated, and drafted the consolidated complaint, including extensive research into the facts and circumstances of the data disclosure and the potential claims and defenses, including retaining a cybersecurity and liability expert, and consulting extensively regarding the Data Incident;

- Interviewed Plaintiffs and putative Class Members regarding their experience with the data disclosure and resulting damages;

- Conferred with HCSG's counsel regarding mediation planning and scheduling a mediation and negotiated regarding potential mediators; and

- Engaged in pre-mediation settlement discussions with HCSG's counsel.

Joint Counsel Fee Decl. ¶¶ 4–6.

4

In tandem with the litigation, the Parties began discussing early resolution. *Id.* ¶ 6. To facilitate settlement negotiations, the Parties agreed to engage Mr. Picker as the mediator. *Id.* Mr. Picker has extensive experience in class action mediation, including privacy litigation. *See, e.g., Bianucci v. Rite Aid Corp.*, No. 24-cv-3356, 2025 WL 2166015, at *4 (E.D. Pa. July 30, 2025) (describing Mr. Picker as "a well-respected mediator with experience in data breach class actions.").

Prior to mediation, the Parties engaged in pre-mediation discovery. Joint Counsel Fee Decl. ¶ 6. Specifically, Class Counsel served HCSG with detailed mediation-related discovery requests; reviewed HCSG's responses and objections to those requests; and conferred with HCSG's counsel regarding its responses. *Id.*

Additionally, Class Counsel researched and crafted a detailed, 15-page mediation statement that drew extensively upon Class Counsel's investigation, consultations with cybersecurity and liability experts, and legal research, and included a settlement demand. *Id.* ¶ 7.

On March 11, 2026, the Parties attended and participated in a full-day mediation with Mr. Picker. Joint Counsel Fee Decl. ¶ 8. During the mediation, the Parties were able to reach an agreement in principle on the high-level terms and general structure of the Settlement. *Id.* However, additional work and extensive negotiations were required to finalize and memorialize the terms of the Settlement.

For several weeks following the mediation session, the Parties engaged in negotiations and discussions and finalized a comprehensive Settlement Agreement and related documents. *Id.* ¶ 9. As part of finalizing the details of the Settlement, Plaintiffs solicited competitive bids from multiple settlement administration companies and evaluated those bids to determine which administrator would best serve the needs of the case and the Settlement Class. *Id.* ¶ 10. The Parties

agreed to engage Kroll as the Settlement Administrator and, with Kroll's assistance, the Parties drafted and refined the Claim Form and Notice documents. *Id.* ¶ 11.

As of July 31, 2026, Class Counsel have collectively devoted 634 hours to this matter, for a lodestar total of $519,802.25. *Id.* ¶¶ 12–15 . This does not include the time that will be spent in the future on the continuing efforts to oversee settlement administration, briefing and otherwise preparing for final approval, attending and arguing at the Final Approval Hearing, and responding to inquiries from Settlement Class Members.

As of July 31, 2026, Class Counsel have collectively incurred $15,612.23 in out-of-pocket costs and expenses, and expect to incur additional expenses in connection with final approval and through the conclusion of the Action. *Id*. ¶¶ 16–18. These costs were necessarily incurred and are of the type typically reimbursed by paying clients.

**B.   The Class Representatives' Participation**

Plaintiffs have been dedicated and active participants on behalf of the Class they seek to represent. Joint Counsel Fee Decl. ¶ 19. They assisted Class Counsel's investigation, participated in multiple interviews, and provided supporting documentation and personal information throughout the litigation and in preparation for mediation. *Id.* Plaintiffs reviewed the various complaints and the terms of the Settlement and communicated with Class Counsel regarding the Settlement. *Id.* Class Counsel kept in close contact with Plaintiffs during the litigation through numerous emails and telephone calls. *Id*. Plaintiffs have been vital in litigating this matter, have been personally involved in the case, and support the Settlement. *Id.* Plaintiffs sacrificed more of their privacy for the sake of the Class, and the recovery would not have been possible if they had not done so.

### III.  ARGUMENT

#### A.  The Court Should Approve the Requested Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Traditionally, there are two methods of evaluating requests for attorneys' fees: the percent-of-recovery method and the lodestar method." *In re Philips Recalled CPAP, Bi-Level PAP, & Mech. Ventilator Prods. Litig.*, 347 F.R.D. 113, 131 (W.D. Pa. 2024) (citing *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998)). "Courts generally apply the percentage-of-recovery method in class actions involving a common fund." *Cantave v. Saint Joseph's Univ.*, No. 23-cv-3181, 2024 WL 4829718, at *5 (E.D. Pa. Nov. 19, 2024) (citing *Serano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 418 (E.D. Pa. 2010)); *accord Ahrendsen v. Prudent Fiduciary Servs., LLC*, No. 21-cv-2157, 2023 WL 4139151, at *6 (E.D. Pa. June 22, 2023) (where the settlement has created a common fund, "[t]he preferred method for calculating attorneys' fees [is] the percentage-of-recovery approach, [which] involves applying a certain percentage to the total settlement fund to calculate attorney's fees") (citing *Stevens v. SEI Invs. Co.*, No. 18-cv-4205, 2020 WL 996418, at *10 (E.D. Pa. Feb. 28, 2020)). That is also the methodology that this Court has followed in evaluating fee requests in other – class actions. *See Bianucci*, 2025 WL 2166015, at *8 ("Both the Supreme Court and our Court of Appeals favor calculation of attorney's fees as a percentage of class recovery.") (citations omitted).

Courts in the Third Circuit use the seven-factor *Gunter* analysis to evaluate the reasonableness of a fee award under the percentage-of-recovery method. *In re Onix Grp., LLC Data Breach Litig.*, No. 23-cv-2288, 2024 WL 5107594, at *13 (E.D. Pa. Dec. 13, 2024). The *Gunter* factors are:

7

(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). Additional factors—

derived from *In re Prudential*—for the Court to consider are:

(1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (3) any "innovative" terms of settlement.

*In re Philips*, 347 F.R.D. at 132 (citing *In re Prudential*, 148 F.3d at 333). "These factors 'need

not be applied in a formulaic way' because each case is different, 'and in certain cases, one factor

may outweigh the rest.'" *Id.* (quoting *In re Diet Drugs (Phentermine, Fenfluramine,*

*Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 545 (3d Cir. 2009)); *see also In re Suboxone*

*(Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-md-2445, 2024 WL 815503,

at *13 (E.D. Pa. Feb. 27, 2024) ("This list was not intended to be exhaustive.") (citing *Gunter*, 223

F.3d at 195 n.1).

As applied here, the relevant factors demonstrate the reasonableness of the requested fee.

**1. The Attorneys' Fees Are Reasonable Under the *Gunter*/*Prudential* Factors**

**i. *Gunter* Factor 1: The Size of the Fund Created and Number of Persons Benefitted**

The $3,000,000 non-reversionary Settlement Fund provides a substantial benefit to Class

Members. Class Members who file a timely and valid claim can receive a cash payment, and all

Class Members—irrespective of whether they file a Claim Form—will benefit from the security

enhancements being undertaken by Defendant. *See* SA at ¶ 59 (describing business practice

8

enhancements undertaken by HCSG as part of the Settlement consideration). This *Gunter* factor, accordingly, is satisfied. *See Barletti v. Connexin Software, Inc.*, No. 22-cv-04676, 2024 WL 1096531, at *7 (E.D. Pa. Mar. 13, 2024) ("Class members are the direct beneficiaries" of a similar non-reversionary settlement, meaning, "class members will reap the full benefit of the settlement regardless of how many make claims"); *Johnson v. Cmty. Bank*, *N.A.*, No. 12-cv-01405, 2013 WL 6185607, at *7 (M.D. Pa. Nov. 25, 2013) (first *Gunter* factor met because the "settlement confers certain nonmonetary [injunctive] benefits on . . . class members").

The $4.80 per capita recovery[3]—often used as a benchmark for comparing data breach settlements— achieved in this Settlement presents an extraordinary result when compared to other data breach settlements approved in this District and elsewhere. This is reflected in the chart below:

| Case | No. of Class Members | Settlement Fund | Gross Recovery Per Class Member |
|---|---|---|---|
| *Barletti v. Connexin Software, Inc.*, No. 22-cv-04676 (E.D. Pa.) | 2.8M | $4M | $1.43 |
| *In re Forefront Dermatology Data Breach Litig.*, No. 21-cv-887 (E.D. Wis.) | 2.4M | $3.75M | $1.56 |
| *In re NCB Management Services, Inc. Data Breach Litig.*, No. 23-cv-01236 (E.D. Pa.) | 1.63M | $2.625M | $1.61 |
| *In re Enzo Biochem Data Security Litig.*, No. 23-cv-04282 (E.D.N.Y.) | 2.5M | $7.5M | $3.00 |
| *In re Wright & Fillipis LLC Data Breach*, No. 22-cv-12908 (E.D. Mich.) | 877,584 | $2.9M | $3.30 |
| *Breneman v. Keystone Health*, No. 23-cv-618 (Pa. Ct. Com. Pl., Franklin Cnty.) | 235,237 | $900,000 | $3.83 |

---

[3] The $3,000,000 Settlement Fund divided by 624,652 Settlement Class Members is a gross recovery per person (or "per capita") of $4.80.

| | | | |
|---|---|---|---|
| *In re Onix Grp., LLC Data Breach Litig.,* No. 23-cv-2288 (E.D. Pa.) | 308,942 | $1.25M | $4.05 |
| ***The proposed Settlement here*** | **624,652** | **$3M** | **$4.80** |

The settlements listed above have received final approval, and the Court in each of these cases granted class counsel's request for attorneys' fees and expenses. The amount recovered as part of this Settlement ($3,000,000 non-reversionary Settlement Fund, at $4.80 per capita) is comparable, if not superior, to the settlements identified in the above chart and, in general, many other data breach settlements.

The result obtained here, coupled with the extensive efforts and resources expended by Class Counsel to attain it, merits the requested fee award. *See, e.g.*, *Rouse v. Comcast Corp.*, No. 14-cv-1115, 2015 WL 1725721, at *12 (E.D. Pa. Apr. 15, 2015) (allowing percentage-of-recovery for attorneys' fees at roughly 35%); *Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322, 342 (E.D. Pa. 2007) (awarding 35% because of the excellent results achieved). The first *Gunter* factor favors Plaintiffs' request.

### ii.   *Gunter* Factor 2: Presence or Absence of Substantial Objections by Class Members

As noted above, the deadline for submitting objections is September 4, 2026, and no objections have been filed to date.[4] On the other hand, as of August 7, 2026, 14,815 Class Members have decided to participate in the Settlement, reflecting the quality of the Settlement Benefits obtained on behalf of the Class.[5] This *Gunter* factor weighs in Plaintiffs' favor. *See Stechert v. Travelers Home & Marine Ins. Co.*, No. 17-cv-0784, 2022 WL 2304306, at *12 (E.D. Pa. June 27,

---

[4] Plaintiffs reserve the right to respond to any objections that may be filed.

[5] Plaintiffs will provide the Court with a declaration from the Settlement Administrator in connection with their motion for final approval that will reflect the latest number of claims received.

2022) ("No one has objected to any part of the Settlement, including to the $1,210,000 carveout for attorneys' fees. The lack of objection from the Settlement Class weighs in favor of approval."); *Lake Forest Partners, L.P. v. Sprint Commc'ns Co. L.P.*, No. 12-cv-00999, 2013 WL 3048919, at *4 (W.D. Pa. June 17, 2013) ("The absence of objections by class members to Settlement Class Counsel's fee-and-expense request further supports finding it reasonable.").

### iii.  *Gunter* Factor 3: The Skill and Efficiency of the Attorneys

Class Counsel and their respective firms have substantial experience in complex class actions, with specific expertise in data breach and other data privacy litigation. The Court analyzed Class Counsel's collective experience when approving their initial leadership application (ECF Nos. 7, 8, 18, 23, 24), and again at the preliminary approval stage (ECF Nos. 34, 35), and found that the undersigned and their respective firms are qualified to serve as lead counsel. Nothing has changed that would alter the Court's prior determinations.

Class Counsel obtained an objectively outstanding result in the face of significant litigation risk for their clients and the Class, while also handling this case professionally and efficiently. This *Gunter* factor is satisfied.

### iv.  *Gunter* Factor 4: The Complexity and Duration of the Litigation

Class Counsel investigated and then litigated and managed this case on a fully contingent fee basis for approximately 11 months. Prelim. Appr. Decl. ¶ 19; *see also In re Onix Grp.,* 2024 WL 5107594, at *14 (observing that "class counsel have litigated this case for well over a year" in finding this *Gunter* factor to be satisfied). Class Counsel have devoted substantial resources to the prosecution of this Action by investigating Plaintiffs' claims and those of the Settlement Class, including: obtaining, reviewing, and analyzing Plaintiffs' detailed personal records; analyzing the scope and number of persons impacted by the Data Incident; dark web monitoring; engaging

11

experts to analyze the Data Incident and its potential impact; analyzing confirmatory discovery produced by HCSG; evaluating how the Data Incident occurred and what information the perpetrators took and how they might use that information; participating in mediation with Mr. Picker; and, ultimately, negotiating a settlement that provides meaningful relief for the Settlement Class, despite the substantial litigation risks presented by the case. Prelim. Appr. Decl. ¶ 19. Thereafter, Class Counsel dedicated their efforts toward notice, effectuating administration of the Settlement, and preparing to submit this motion and the motion for final approval. Class Counsel's efforts no doubt will continue to be extensive and will be ongoing through final approval (and beyond). *See In re Suboxone*, 2024 WL 815503, at *17 ("In addition [to the billable time already expended], Class Counsel will undoubtedly need to spend additional hours in order to monitor and administer the Settlement and final closing of this case."). This *Gunter* factor is satisfied.

### v. *Gunter* Factor 5: The Risk of Nonpayment

Plaintiffs and the Class faced the risk of receiving no recovery at all if the litigation was unsuccessful. This risk was real, because, as has been recognized by this Court, data breach litigation is inherently complex:

> The complexity and duration of this data breach class action requires experienced counsel. This type of case presents issues on the duty of care . . . in storing their personal information, Article III standing . . . types of damages available at trial, and whether the plaintiffs can obtain and maintain class certification. This [*Gunter*] factor . . . weighs in favor of finding the fee reasonable.

*Fulton-Green v. Accolade, Inc.*, No. 18-cv-274, 2019 WL 4677954, at *13 (E.D. Pa. Sept. 24, 2019). Courts across the country also have recognized that data breach class actions are risky and expensive. *See, e.g.*, *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky, expensive, and complex . . . and they present significant challenges to plaintiffs at the class

12

certification stage.") (internal citations omitted; collecting cases); *see also In re Onix Grp.,* 2024 WL 5107594, at *14 ("The fifth [*Gunter*] factor also favors approval because class counsel pursued this [data breach] litigation on a contingency fee basis and advanced significant out-of-pocket expenses to advance this case.").

Notwithstanding these risks, Class Counsel devoted hundreds of hours of time over an 11-month (and counting) period, and advanced significant out-of-pocket costs, to progress this case. Joint Fee Decl. ¶¶ 12–18. "Taking such a risk on behalf of the class lends credence to the fee request … and thus this factor supports approval." *Corra v. ACTS Ret. Servs., Inc.*, No. 22-cv-2917, 2024 WL 22075, at *14 (E.D. Pa. Jan. 2, 2024) (citing *Fulton-Green*, 2019 WL 4677954, at *13).

### vi. *Gunter* Factor 6: The Amount of Time Devoted by Plaintiffs' Counsel

The number of hours incurred by Class Counsel has been extensive but was reasonable and necessary for a case of this type and size. Joint Fee Decl. ¶ 15. As discussed in more detail below, beginning with their pre-suit investigations, Class Counsel have collectively expended 634 hours in litigating this case. *Id*. ¶ 12–15. Among other tasks, Class Counsel filed motions to consolidate these actions (ECF Nos. 7, 12); filed a motion to appoint lead counsel pursuant to Fed. R. Civ. P. 23(g) (ECF No. 18); conducted independent and in-depth pre-suit case investigations; stayed abreast of news and publications concerning the Data Incident; communicated with and vetted Class Members from different states; made determinations about which individuals are best suited to serve as lead Plaintiffs; filed separate complaints initially followed by a comprehensive consolidated complaint; engaged in pre-mediation exchanges with Defendant; mediated with Mr. Picker; negotiated an exemplary Settlement for the Class; negotiated the terms of the Settlement Administrator's retention and the Notice Plan; and memorialized the various settlement documents. *Id*. ¶ 4–11. This *Gunter* factor is readily satisfied.

13

### vii.  *Gunter* Factor 7: Awards in Similar Cases

While there is no benchmark for the percentage of fees to be awarded in common fund cases, courts within this District have recognized that "fee awards ranging from 30% to 43% have been awarded in cases with funds ranging from $400,000 to $6.5 million." *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 497–98 (E.D. Pa. 2018). The one-third fee that Class Counsel requests is well within this range, justified by the efforts expended and the excellent result obtained, and has been approved by other Pennsylvania courts in data breach class action settlements. *See, e.g.*, *In re Gateway Rehab. Ctr. Data Breach Litig.*, No. GD-22-14713 (Pa. Ct. Com. Pl., Allegheny Cnty. Mar. 10, 2025) (35% fee approved); *Breneman v. Keystone Rural Health Center d/b/a Keystone Health*, No. 23-cv-618 (Pa. Ct. Com. Pl., Franklin Cnty. Aug. 15, 2023) (same); *see also In re Onix Grp.,* 2024 WL 5107594, at *14 (approving a 33% fee in a case where no motion to dismiss had been filed or briefed and recognizing that "courts regularly approve fee awards around this size"); *In re Philadelphia Inquirer Data Sec. Litig.*, No. 24-cv-2106, 2025 WL 845118, at *13 (E.D. Pa. Mar. 18, 2025) ("Class counsel have requested roughly 33% of the distribution to the settlement class. … Because courts regularly approve fee awards around this size, this factor is met here.") (citation omitted).

### viii.  *Prudential* Factor 1: Value of Class Benefits Attributable to the Work of Class Counsel as Opposed to the Efforts of Others

This factor supports the fee request because "[t]here is no indication that any other groups, such as government agencies conducting investigations, have contributed to this case and Settlement." *Corra,* 2024 WL 22075, at *15.

14

### ix.  *Prudential* Factor 2: Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Agreement

The court in *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation* held that "[i]n making a common benefit award, we must try to ascertain what the market would pay for the attorneys' efforts. That is, we must consider 'the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained.'" 553 F. Supp. 2d 442, 482 (E.D. Pa. 2008) (quoting *In re AT & T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006)).

Courts have recognized in this context that "'[a]ttorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation.'" *In re Philips*, 347 F.R.D. at 134 (quoting *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 156 (D.N.J. 2013)). The one-third amount sought here is within this range.

### x.  *Prudential* Factor 3: Any "Innovative" Terms of the Settlement

In addition to the monetary Settlement Benefits made available as part of the Settlement, Plaintiffs have negotiated three years of single-bureau Credit Monitoring and a commitment that Defendant will adopt reasonable data and information security measures, at its expense, which are designed to strengthen Defendant's data and information security. SA ¶¶ 57, 59. This additional relief is meaningful and substantial, and benefits all Class Members, including those who do not submit a Claim Form for a monetary payment. This likewise supports the fee request. *Corra*, 2024 WL 22075, at *13 (finding that non-monetary data security improvements included as a term in the settlement "is likely of great value to the class members in that it ensures that their information is better protected from data security incidents . . . ."); *see also McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 478 (D.N.J. 2008) ("The value of the injunctive relief here is a highly relevant

15

circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees.").

In sum, application of the applicable *Gunter/Prudential* factors indicates that the fee request is reasonable under the percentage-of-the-fund methodology and should be approved.

### 2. The Requested Fee Is Reasonable Under a Lodestar Cross-Check

Courts assessing fees under the percentage-of-recovery method often look to "the lodestar method to cross-check the reasonableness of a percentage-of-recovery fee award." *In re AT & T Corp.*, 455 F.3d at 164. "The purpose of the cross-check is to ensure that the percentage approach does not result in an 'extraordinary' lodestar multiple or windfall." *In re Onix Grp.,* 2024 WL 5107594, at *15 (quoting *Whiteley v. Zynerba Pharms., Inc.*, No. 19-cv-4959, 2021 WL 4206696, at *13 (E.D. Pa. Sept. 16, 2021)). The lodestar is calculated "by multiplying a reasonable hourly rate by the number of hours reasonably expended on the case." *Meigs v. Care Providers Ins. Servs., LLC*, No. 21-cv-867, 2024 WL 21792, at *3 (E.D. Pa. Jan. 2, 2024) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

Here, Class Counsel and their firms' collective lodestar of $519,802.25 is based on 634 billable hours (through July 31, 2026). *See* Joint Fee Decl. ¶¶ 12–15. And, as work continues on behalf of the Class through final approval, these numbers will only increase.[6]

The amount of time worked and the billable rates here are reasonable. *Id*. ¶ 15; *see Fulton-Green*, 2019 WL 4677954, at *12 (approving class counsel's rates that ranged from $202 to $975

---

[6] As noted above, the current figures do not account for any billable time incurred after July 31, 2026, such as drafting, refining, and finalizing the motion for final settlement approval, continued communications with Class Members about the Settlement, coordination with Defendant and the Settlement Administrator regarding settlement administration (e.g., responding to inquiries by Class Members, reviewing Claim Forms, etc.), and preparing for the final approval hearing or overseeing the claims administration process. *See, e.g.*, *In re Suboxone*, 2024 WL 815503, at *17.

16

per hour, including Levin Sedran & Berman's ("LSB") then current rates); *In re Suboxone*, 2024 WL 815503, at \*17 (approving a senior partner's $1,550 billing rate); *In re Imprelis Herbicide Mktg., Sales Pracs. & Prod. Liab. Litig.*, 296 F.R.D. 351, 370 (E.D. Pa. 2013) (approving fee request where hourly rates peaked at $1,200 and several attorneys' rates were at or above $900); *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2012 WL 5467530, at \*6 (E.D. Pa. Nov. 9, 2012) (approving fee request where hourly rates peaked at $1,100 and several attorneys' rates were at or above $900; "the Court finds that the stated hourly rates of these attorneys and staff . . . are reasonable"); *Se. Pennsylvania Transportation Auth. v. Orrstown Fin. Servs., Inc.*, No. 12-cv-00993, ECF No. 309 (M.D. Pa. May 19, 2023) (granting final approval and award of attorneys' fees, approving hourly rates of up to $1,100, where several attorneys' rates were at or above $875); *Bianucci*, 2025 WL 2166015, at \*9 n.6 (approving Ahdoot & Wolfson's ("AW") and Shub Johns & Holbrook LLP's 2025 billing rates and finding "rates, which range from $1,300 to $850 for partners, $800 to $520 for associates, and $350 to $150 for support staff, to be reasonable . . . ."); *Anaya v. Cencora, Inc.*, No. 24-cv-02961, ECF No. 140 (E.D. Pa. Feb. 11, 2026) (granting fee award of one-third of a $40 million common fund in a medical information data breach settlement, and approving AW lawyers' hourly rates); *In re loanDepot Data Breach Litig.*, No. 24-cv-00136, ECF No. 97 (C.D. Cal. Aug. 25, 2025) (approving then-current rates of $850 to $1,200 for AW's partners); *In re Onix Grp.*, 2024 WL 5107594, at \*16 (finding a $1,057 hourly rate to be reasonable in a data breach settlement); *In re Philadelphia Inquirer Data Sec. Litig.*, 2025 WL 845118, at \*15 (approving Mr. Johns' hourly rate in a data breach settlement); *Segebarth v. CertainTeed LLC*, No. 19-cv-05500, ECF No. 79 (E.D. Pa. Jan. 31, 2023) (approving LSB's hourly rates, ranging from $500 to $1,250 per hour for attorneys and $110 to $475 per hour for paralegals); *Erby v. Allstate Fire and Casualty Ins. Co.*, No. 18-cv-04944, ECF No. 63 (E.D. Pa. Oct. 24, 2022)

17

(approving LSB's hourly rates, ranging from $450 to $975, and the number of hours worked as reasonable).

This Court has recognized that "[w]here there has been a class settlement, this lodestar 'is usually multiplied by a factor to reflect the degree of success, the risk of non-payment the attorneys faced and perhaps the delay in payment that they encountered.'" *In re Suboxone*, 2024 WL 815503, at *18 (quoting *Brown v. Esmor Corr. Servs.*, No. 98-cv-1282, 2005 WL 1917869, at *13 (D.N.J. Aug. 10, 2005)). Indeed, the Third Circuit "has recognized that multipliers 'ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.'" *Katz v. DNC Servs. Corp.*, No. 16-cv-5800, 2024 WL 454942, at *14 (E.D. Pa. Feb. 6, 2024) (quoting *In re Prudential*, 148 F.3d at 341); *see also Sorace v. Wells Fargo Bank, N.A.*, No. 20-cv-4318, 2024 WL 643229, at *13 (E.D. Pa. Feb. 15, 2024) (approving a lodestar multiplier of three), *aff'd*, No. 24-cv-1498, 2024 WL 5116797 (3d Cir. Dec. 16, 2024); *Katz v. DNC Servs. Corp.*, 2024 WL 454942, at *15 (approving a 2.08 lodestar multiplier); *Moore v. Indep. Blue Cross, LLC*, No. 23-cv-0566, 2024 WL 4756903, at *3 (E.D. Pa. Nov. 12, 2024) (approving multiplier of 1.60); *In re Suboxone*, 2024 WL 815503, at *18 (approving a lodestar multiplier of 1.5).

Because the actual lodestar ($519,802.25) is less than the requested fee ($1,000,000), the cross-check yields a modest multiplier of 1.92. The modest multiplier of 1.92 sought here is reasonable under the circumstances. And it will only continue to decrease as Class Counsel's efforts extend beyond the Final Approval Hearing through case close-out. Accordingly, it should be approved.

## B.  The Expense Reimbursement Request Is Reasonable

Class Counsel also request reimbursement of $15,612.23 in litigation expenses and costs. Reimbursement of expenses and costs incurred in litigating a class action are ordinarily recovered

18

as part of settlement approval. *See Sweda v. Univ. of Pennsylvania*, No. 16-cv-4329, 2021 WL 5907947, at *7 (E.D. Pa. Dec. 14, 2021) ("Attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation expenses from the fund.") (quoting *In re Aetna Inc.*, No. MDL 1219, 2001 WL 20928, at *13 (E.D. Pa. Jan. 4, 2001)).

A chart summarizing the expense categories and amounts incurred by each firm is set forth in the accompanying counsel declaration. Joint Fee Decl. ¶¶ 16–18. The expense categories are consistent with the types of expenses commonly approved by courts. *See Acevedo v. Brightview Landscapes, LLC*, No. 13-cv-2529, 2017 WL 4354809, at *20 (M.D. Pa. Oct. 2, 2017) (approving class counsel's request for reimbursement of, e.g., filing fees, mediation fees, and legal research costs); *Glaberson v. Comcast Corp.*, No. 03-cv-6604, 2015 WL 5582251, at *16 (E.D. Pa. Sept. 22, 2015) (approving class counsel's request for reimbursement of, e.g., expert witness fees and legal research costs); *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*, 263 F.R.D. 226, 245 (E.D. Pa. 2009) (approving class counsel's request for reimbursement of, e.g., "expert witness fees; mediation fees; . . . legal research; . . . and service of process").

### C. The Requested Service Awards Are Reasonable

Finally, Plaintiffs request approval of $2,500 Service Awards to each of the four Class Representatives (totaling $10,000) for their time and effort pursuing the litigation on behalf of the Class.[7] Each Plaintiff actively participated in the litigation and settlement of this matter. Joint Fee Decl. ¶ 19. They were available at each stage of the litigation, and the Settlement would not have been possible without their efforts. *Id*. The $2,500 Service Award amount is consistent with service awards commonly approved within the Third Circuit and by this Court. *Cantave*, 2024 WL

---

[7] As with the attorneys' fees and expenses, any Service Awards approved by the Court will be paid from the Settlement Fund. SA ¶ 52.

4829718, at *5 (approving a $2,500 Contribution Award for named Plaintiff); *Barletti v. Connexin Software, Inc.*, No. 22-cv-04676, 2024 WL 3564556, at *1 (E.D. Pa. July 24, 2024) (approving $2,500 incentive awards to plaintiffs in a data breach case). The requested amounts are also comparable to service awards approved in other consumer data breach class actions. *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-md-02752, 2020 WL 4212811, at *43 (N.D. Cal. July 22, 2020)*, aff'd*, No. 20-cv-16633, 2022 WL 2304236 (9th Cir. June 27, 2022) (approving "$2,500 for the five Settlement Class Representatives who participated in the instant case without being deposed"); *Chipotle*, 2019 WL 6972701, at *2 ($2,500 service awards for each of six plaintiffs in case that settled prior to depositions); *see also Bianucci*, 2025 WL 2166015, at *10 (making the following observations in approving $3,500 service award payments: "Incentive awards are common in class actions, especially in cases where a common fund has been created to benefit the entire class" and "[t]hese awards are in line with payments made to lead plaintiffs in similar actions") (citations omitted).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and approve the requested attorneys' fees, reimbursement of litigation costs and expenses, and Service Awards to the Class Representatives.

Dated: August 13, 2026                                Respectfully submitted,

*/s/ Andrew W. Ferich*
Andrew Ferich (PA I.D. No. 313696)
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Tel: (310) 474-9111
aferich@ahdootwolfson.com

Benjamin F. Johns (PA I.D. No. 201373)
**SHUB JOHNS & HOLBROOK LLP**

20

Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Tel: (610) 477-8380
bjohns@shublawyers.com

Charles E. Schaffer (PA I.D. No. 76259)
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
cschaffer@lfsblaw.com

*Settlement Class Counsel*

21